The People of the State of New York, Respondent, *v.* Philip Quintana, Appellant.

First Department, June 19, 1940.

*Irving Novis* of counsel [*Leo Kraus*, attorney], for the appellant.

*Sol Boneparth* of counsel [*Herman J. Fliederblum* with him on the brief; *Samuel J. Foley, District Attorney*], for the respondent.

Martin, P. J. The defendant has been convicted of unlawfully carrying and possessing a blackjack. Police Officer Benjamin Friedman testified that on May 2, 1939, he was approached by a man named Edward Scherer who stated that he was having some trouble with the defendant about his (Scherer's) wife. Scherer told the officer that he wanted to discuss the matter with the defendant and he asked the officer to accompany him to the home of the defendant. The officer testified that he did so and that when the defendant came to the door in answer to the bell he was not wearing a coat and a blackjack was clearly visible as it protruded from a rear pocket of his trousers. At that time the defendant told the police officer that he was employed as a conductor by the Interborough Rapid Transit Company and that he had found

the blackjack the previous night on a subway train. He then stated that it was in his possession pending its return to the proper authority in the Interborough Rapid Transit Company. The defendant told the officer that he had forgotten to turn it in to the company. The police officer arrested the defendant.

The defendant testified that he had been employed as a conductor for fifteen years; that he went to work at two-seventeen A. M. on the day of his arrest and, while inspecting the cars of his train at the end of the line in accordance with instructions to look for articles left by passengers, he found the blackjack. He placed the article in the right side pocket of his coat but shortly thereafter a passenger asked him what he was doing with it and to avoid further questions he put it in his rear trouser pocket. When his tour of duty was completed the defendant, having forgotten about the blackjack, did not turn it in to the proper office as required by the rules. He went to his home and forgot that he had the blackjack. He also testified that he was suspended for two days by his employer for failure to observe the rule requiring him to turn in articles found in trains.

The defendant's wife testified that they had been married for four and a half years; that she had never seen the blackjack at any time. She also testified that she was employed and that the defendant helped support her mother who lived with them.

The court found the defendant guilty and then suspended sentence because of his good record and the fact that he had not tried to hide the blackjack.

The People contend that under subdivision 1 of section 1897 of the Penal Law any one who " carries, or possesses, any instrument, or weapon of the kind commonly known as a blackjack * * * is guilty of a misdemeanor," and that no evidence of an intent to use the blackjack is required, as mere possession constitutes a violation of the statute.

The appellant contends that where proof is presented which conclusively established that the possession is without any wrongful intention he may not be convicted of violating the statute. There is no evidence in the record from which an intent to use the weapon can be presumed or inferred.

In *People* v. *La Pella* (272 N. Y. 81), a case involving possession of a pistol, the court said: " The ' possession ' forbidden by the statute ' should not be construed to mean a possession * * * which might result temporarily and incidentally from the performance of some lawful act' (*People* v. *Persce,* 204 N. Y. 397, 402), particularly when, as is here claimed, the act was designed to meet the social policy of the law."

Possession unexplained may constitute a violation of the Penal Law but it was never intended that despite a proper and convincing explanation mere possession should be considered a criminal act. The statute now under consideration was phrased in its present form in order to make wrongful possession a crime.

The defendant was following instructions and performing a civic duty in taking possession of this blackjack for the purpose of turning it over to the proper authority in the railroad company. Otherwise it might have fallen into the hands of some person who might have used it improperly. All the evidence in the case shows that the defendant made no improper use of the weapon. There was no attempt at concealment as part of the blackjack was protruding from the pocket of the defendant in full view of the police officer when he entered the defendant's home. As a matter of fact, on the proceedings at which sentence was suspended by the court, the presiding justice stated: "You didn't hide that blackjack. It was in plain view."

The uncontradicted testimony in the record sustains the contention of the defendant that he picked up the blackjack in the subway train on which he was employed as a conductor, in accordance with his instructions and for the purpose of turning it over to the proper representatives of the railroad company. It negatives the presumption that possession of the blackjack implied an intention to use it. We must conclude, therefore, that the possession by the defendant was temporary and incidental and for the purpose only of giving the article to the officials of the company.

Incidentally, it may not be amiss to advert to the fact that the dissenting opinion is based upon conjecture and surmise. The prevailing opinion is based only upon the facts contained in the record. If this defendant had a prior conviction, that fact might be taken into consideration. Instead, we have before us a defendant of good character, who has been continuously employed by the Interborough Rapid Transit Company for fifteen years. The courts have constantly held that good character should be taken into consideration in a case of this kind, and that it may of itself create a reasonable doubt, when without it none would exist.

The judgment of conviction should be reversed and the information dismissed.

TOWNLEY and DORE, JJ., concur; O'MALLEY and UNTERMYER, JJ., dissent and vote to affirm.

UNTERMYER, J. (dissenting). If every explanation of a defendant in a criminal case must be accepted as true by experienced trial judges who have the opportunity to appraise his credibility, then

this statute, so necessary for the protection of the public, is a waste of words. It would indeed be an unresourceful defendant who, found with a blackjack, could not devise some plausible story to account for his possession. The credibility of such explanations is for the triers of the facts.

There are many reasons for believing that the defendant's possession of the blackjack was not accidental or innocent. The police officer had been requested by one Scherer to accompany him to the home of the defendant, with whom Scherer desired to discuss some controversy relating to Scherer's wife. Obviously, Scherer anticipated the possibility of an attack, for otherwise he would not have requested the protection of the officer. That these fears were not groundless is established by the fact that the defendant answered the door bell with a blackjack in his hip pocket available for immediate use.

The defendant, apparently not aware that the police officer was at his door with Scherer, answered the door bell without his coat on and with the blackjack protruding from his hip pocket. His explanation then and at the trial was that about three-thirty of that morning he had found the blackjack in the subway where he was employed as a conductor, that he had placed it in his coat pocket and had inadvertently taken it home. This improbable story was rendered even more improbable by other circumstances to which the defendant testified. The defendant attempted to account for the fact that the blackjack was found in his hip pocket when he opened the door rather than in his coat pocket where he claims first to have placed it, by testimony that he had moved it from one pocket to the other because a passenger had observed it in his coat pocket and had asked what he was doing with such a weapon. But how a passenger in the subway could have observed an object of such small size in the defendant's coat pocket is difficult to understand. The trial court had the right to conclude that this was so improbable that it must have been concocted to explain the presence of the blackjack in the defendant's hip pocket (where such weapons are commonly carried when intended for use rather than for safe-keeping) when he answered the door bell without his coat.

There was a rule of the Interborough Rapid Transit Company requiring employees who had found articles in subway trains to turn them in at the conclusion of work. The defendant attempted to explain the failure to comply with that rule by testimony that he had forgotten that he had the blackjack when he ceased work, even though not long before, as he testified, he was reminded of that fact by the passenger who had asked him what he was doing

with a blackjack. After failing to turn in the blackjack as required by the company rules the defendant took it to his home and, as he claimed, was not aware that he had it on his person when confronted by the police officer and Scherer at the door. In view of the extreme improbability of all these explanations the question of the defendant's credibility was for the trial judges, who had the opportunity, denied to us, of observing the defendant's demeanor and expression as he gave his evidence on the witness stand. Deprived of these advantages we ought not to substitute our judgment for the judgment of the triers of the facts (*People* v. *Becker*, 215 N. Y. 126), especially in a case in which the justice who presided at the trial declared that he and his associates entertained no doubt of the defendant's guilt.

I accordingly dissent and vote to affirm the judgment of conviction.

O'MALLEY, J., concurs.

Judgment reversed and information dismissed.