50 N.Y.2d 1043 (1980)
The People of the State of New York, Respondent,
v.
Lester Williams, Appellant.
Court of Appeals of the State of New York.
Argued June 6, 1980.
Decided July 8, 1980.
Gary E. Divis and William E. Hellerstein for appellant.
Eugene Gold, District Attorney (William C. Heffernan of counsel), for respondent.
Chief Judge COOKE and Judges JASEN, GABRIELLI, JONES, WACHTLER and MEYER concur in memorandum; Judge FUCHSBERG dissents and votes to reverse in a separate opinion.
*1044 MEMORANDUM.
The order of the Appellate Division should be affirmed.
Viewing the testimony in a light most favorable to the defendant (People v Steele, 26 N.Y.2d 526), the failure to grant the request to charge the jury on innocent possession of a *1045 firearm does not constitute reversible error. It is settled that possession  an essential element of criminal possession of a weapon  does not turn upon physical handling of the prohibited weapon alone. There are instances, therefore, in which possession might result unavoidably from the performance of some lawful act and would not constitute a crime (People v La Pella, 272 N.Y. 81; People v Persce, 204 N.Y. 397, 402; see, also, People v Furey, 13 AD2d 412). While it would be unwise to detail here those instances in which an innocent possession charge might be warranted, it suffices to note that the underlying purpose of the charge is to foster a civic duty on the part of citizens to surrender dangerous weapons to the police (People v La Pella, supra). Thus, to trigger the right, there must be proof in the record showing a legal excuse for having the weapon in his possession as well as facts tending to establish that, once possession has been obtained, the weapon had not been used in a dangerous manner (People v La Pella, supra; People v Persce, supra).
In the present case, the evidence is utterly at odds with any claim of innocent possession. Upon discovering the gun, defendant removed the weapon and secreted it in a new hiding place, removing it when it suited his own purpose and handling it in a manner which may be charitably characterized as reckless. Hence, giving an innocent possession charge in these circumstances was not warranted.
FUCHSBERG, J. (dissenting).
On the facts of this case, defendant had the right to have the jury consider his defense of innocent possession. Accordingly, the court's refusal to so charge was reversible error.
At trial, Williams took the stand and testified that, while he was moving his friend's furniture to her new apartment, he discovered a handgun lying under the cushions of a couch. Without advising anyone of its presence, he immediately placed the revolver deep into a crevice in the couch and continued transporting the furniture to the new residence. Upon arriving, defendant removed the gun from the couch and placed it in the kitchen under the stove. Later, when he and the others who had volunteered to help were relaxing after their labors, Williams retrieved the weapon from under the stove to show it to another member of the group. He had been holding the pistol for no more than two or three seconds, spinning it playfully like a cowboy, when it suddenly went off, hitting the woman they had helped move. Defendant further *1046 testified that he did not know the gun was loaded, did not intend for it to fire, had no intention to keep it and, indeed, had never owned or fired a handgun in his life.
In view of these facts, counsel requested a charge on innocent possession, but the court refused. I would hold this was grievous error.
It is a fundamental principle of our system of criminal justice that the record be viewed in the light most favorable to the defendant when ruling on a request to charge (People v Steele, 26 N.Y.2d 526, 529). This is no mere empty cliche. Since the jury is free to credit any portion of the prosecution's or the defendant's evidence, only when there is no view of the facts that supports the defense, no "possible hypothesis" under which it is applicable, may a court refuse an appropriate request (cf. People v Asan, 22 N.Y.2d 526, 529-530). Moreover, the rule has constitutional overtones, particularly in a case such as this where the People have the burden of disproving the defense beyond a reasonable doubt (see Penal Law, § 25.00, subd 1) and its subject matter is intimately intertwined with the definition of "possession" itself, an essential element of the crime charged (see, generally, Patterson v New York, 432 US 197; Criminal Procedure, 1978 Ann Survey Am L 17).
These cautions in mind, a fair reading of the authorities demonstrates that defendant's testimony put him within the compass of the innocent possession defense. The two threads running through each of the cases holding the defense available are the inadvertence of defendant's original acquisition of the item and the brevity of his exercise of control over it.
Thus, in People v La Pella (272 N.Y. 81) the court held the charge ought to have been given where defendant came upon a firearm in a public rest room and kept it on his person until he surrendered it to a police officer. And, in People v Quintana (260 App Div 13) the defense was applied on behalf of a subway conductor who testified he found a blackjack on a train and kept it overnight. These cases demonstrate that brevity of retention is a relative concept, peculiarly appropriate for resolution by a fact finder in the light of all the circumstances. In La Pella the time span was about 20 minutes, whereas in Quintana it was perhaps eight hours or more. The facts to which Williams testified, which encompassed the brief period involved in making three trips to carry the apartment's contents between locations only a few city houses apart, were well within this range.
*1047 In the end, the question is whether the jury could have found defendant's possession innocent. It was certainly within their province to believe his testimony that his discovery of the gun was inadvertent, and it was up to them to judge the reasonableness of his responses to this occurrence. After all, he did not have to leave the dangerous weapon in the empty apartment where it might be discovered by one bent upon a criminal purpose. Moreover, the jury might reasonably have construed defendant's secreting of the revolver under the stove in the new apartment as a further attempt at safekeeping pending a decision as to how to dispose of it. Only an unrealistically unyielding view of the law would demand that the discoverer of a weapon immediately drop everything he is doing, no matter how important, and deliver it to the nearest station house under pain of prosecution for possession. Further, the jury could also have viewed defendant's handling of the gun for a few fleeting seconds before it went off as nothing more than a reflection of a normal curiosity about an unfamiliar and fascinating discovery.
As to the other "elements" of the defense postulated by the majority, Williams' possession of the gun was at least as much the result of a "lawful act" as that in People v Trucchio (47 AD2d 934), where a patron in a bar agreed to hold a firearm for an acquaintance while the latter visited a rest room. And, while the jury could have inferred Williams intended to deliver the weapon to the authorities from his assertion that he did not intend to keep it, even the absence of such a design is of little significance, as demonstrated by both Trucchio and People v Harmon (7 AD2d 159), where the defendant divested an attacker of a blackjack and indicated that he had intended to turn it over to his father. (See, also, People v Persce, 204 N.Y. 397, 402 [giving two examples of innocent possession without expressly stating intent to surrender to the police was necessary].)
Finally, I note the lack of authority to support the majority's suggestion that the weapon must not have been used in a dangerous manner. Quite to the contrary, in People v Furey (13 AD2d 412), cited by the majority itself, the defendant found a gun in the street and picked it up, casually pulling its trigger as he walked along, a use much more likely to endanger others than that involved here. Nevertheless, an innocent possession charge was held to be mandated on the facts of that case.
*1048 To sum it up, the plain import of the innocent possession defense has long been to allow the jury to temper the seemingly absolute language of the statute with a pragmatic assessment of the circumstances in order to determine whether the defendant's conduct was truly culpable. Since Williams testified that his possession was inadvertent, brief and unaccompanied by wrongful intent, however the jury might have weighed it in the end, he was entitled to have the defense charged. We should therefore reverse and remit the case for a new trial.
Order affirmed.