The People of the State of New York, Respondent, *v.* Louis Harmon, Appellant.

Fourth Department, January 7, 1959.

*A. James La Bue* for appellant.

*Harry L. Rosenthal, District Attorney (Leon N. Armer* of counsel), for respondent.

Williams, J. The defendant was convicted of the crime of possession of a blackjack after having been previously convicted of a crime (Penal Law, § 1897, subd. 1). There is no question that when the police officers searched him, they took the blackjack from his possession, in fact, he has admitted it. However, he stated in defense that shortly before the seizure by the police, he had taken it from another person who had used it against him in a fight in the restaurant in which he worked. He indicated that he intended to turn it over to his father. Just why he intended to do so rather than to deliver it to the police is not clear, but apparently he sought to establish

the inference that he would seek his father's advice on how it could be disposed of legally.

Subdivision 1 of section 1897 of the Penal Law reads as follows: " A person who attempts to use against another an imitation pistol, or who carries, or possesses, any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, bludgeon, or who, with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, imitation pistol, machine-gun, sawed off shot-gun, or any other dangerous or deadly instrument, or weapon, is guilty of a misdemeanor, and if he has been previously convicted of any crime he is guilty of a felony.  This subdivision shall not apply to the use or possession of an instrument or weapon commonly known as a machine-gun or a sub-machine gun."

It will be noted that the section really breaks down into three categories: the first applies to a person " who attempts to use against another an imitation pistol "; the second, to one " who carries, or possesses, any instrument or weapon of the kind commonly known as a blackjack "; and the third, to a person " who, with intent to use the same unlawfully against another, carries or possesses a dagger [and other described weapons]." We need consider only the second of these categories under which merely carrying or possessing the instrument or weapon constitutes a crime (*People* v. *Persce,* 204 N. Y. 397), although there are times when possession of a blackjack is not necessarily felonious or illegal. " [I]t [possession] clearly should not be construed to mean a possession for instance such as would theoretically and technically follow from the legal ownership of a weapon in a collection of curious and interesting objects or which might result temporarily and incidentally from the performance of some lawful act, as disarming a wrongful possessor." (*People* v. *Persce, supra,* p. 402.)

There are other situations where there might be an excuse for possession, such as finding a prohibited weapon and endeavoring to take it to the nearest police officer (see e.g., *People* v. *La Pella,* 272 N. Y. 81).  In other words, even though intent is not a necessary element to be proved by the prosecution in the first instance to obtain or substantiate a conviction for possession of a blackjack, if a defendant produces testimony showing a legal excuse for such possession, he would be entitled to have the same submitted to the jury.  Here there was presented a question of fact, not as to whether defendant possessed the article but as to whether his possession was illegal or felonious,

or, in other words, whether he had a legal excuse for having it in his possession (*People* v. *Adler*, 2 N Y 2d 968).

This brings us to a consideration of the alleged errors in the Judge's charge. The factual evidence was sufficient to support a conviction unless errors in the charge require a reversal.

The Trial Judge paraphrased portions of section 1897 as follows: "A person who possesses any instrument or weapon of the kind commonly known as blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, a bludgeon — and here we are referring merely to the blackjack — is guilty of a misdemeanor, and if he has been previously convicted of any crime, he is guilty of a felony." The court then said: "Now, in order to convict this defendant, you must, from the evidence produced on this trial, find beyond a reasonable doubt that this defendant possessed an instrument, a weapon of the kind commonly known as a blackjack." The Trial Judge then instructed that if the jury found that the defendant had a blackjack in his possession, they might convict him, but, "If, on the other hand, you find that any or all of these elements have not been established to your satisfaction, you should acquit this defendant of this crime charged in this indictment."

The above is the substance of all of the main charge referring to possession. The excuse given by the defendant for possession was not mentioned in the charge. The court then asked for exceptions and the defendant's counsel stated: "I request that the Court charge the jury that if the possession of the blackjack by Louis Harmon was obtained by disarming a wrongdoer, then that was not unlawful possession. The Court: I decline to so charge. I can only refer back to the statute. The question is as to whether the jury so finds."

We believe that the court was technically correct in declining this request because the language omitted many important factors such as the time of disarming in relation to the time of seizure, the reason for possession after disarming, and the like. However, the court's reference back to the statute left before the jury the sole question of whether or not the blackjack was in defendant's possession.

Defense counsel then asked: "I'd also like to request your Honor to charge the jury that if the prosecution has failed to satisfy the jury that possession was illegal, then they must bring in a verdict of not guilty. The Court: I so charge." This was the first time that the court had mentioned the possibility of legal possession, and this charge was correct so far as it went, but it still lacked the explanatory instructions to which the defendant was entitled.

The jury then retired and returned for further instructions and apparently before returning had handed a note to the court which said, "We would like to hear the last request of the defense attorney in regards to the judge's charge to the jury — or a ruling on whether there is any possible legal way of temporary possession. The Court: That has to do with the last request to charge made by the defense attorney, is that it? The Jury: That's right." The reporter then read back the last above-quoted request concerning the fact that if the prosecution had failed to satisfy that possession was illegal, they must bring in a verdict of not guilty, and where the court remarked, "I so charge." Then followed: "The Court: Is that clear? The Jury: Is there any way of legal possession? The Court: Is there any reason — any possible legal way of temporary possession? The Jury: That's right. The Court: I think I'll ask the reporter to read that part of my instructions where I read the law as set forth in Section 1897, Subdivision 1 of the Penal Law." The reporter then read back the Judge's charge where he read sections of the indictment and the portion of 1897 quoted above, and then asked: "Does that satisfy you? The Jury: That doesn't clear it up. The Court: But that is the law. Perhaps if the reporter read the rest of the instructions, it might help a little bit." The reporter then read a portion of the charge in which it was stated that in order to convict the jury must find beyond a reasonable doubt that he possessed a blackjack and that if they were convinced beyond a reasonable doubt " that this defendant had in his possession  *  *  *  a blackjack  *  *  *  you may convict this defendant," but if on the other hand, it was found that any of those elements had not been established, the jury would have to acquit him.

Except for the meager statement in the quoted request of defendant that the jury must be convinced that possession was illegal in order to convict, the defendant's excuse for possession was not submitted or explained to the jury. The jury asked for information in this respect, but its request was not satisfied. These errors and failures require reversal.

The judgment of conviction should be reversed and a new trial granted in the interests of justice.

All concur. Present — McCURN, P. J., WILLIAMS, BASTOW, GOLDMAN and HALPERN, JJ.

Judgment of conviction reversed on the law and facts and in the interests of justice, and a new trial granted.