THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JON P. SNYDER and WAYNE R. SNYDER, Appellants.

Third Department, June 16, 1988

## APPEARANCES OF COUNSEL

*O'Connell & Aronowitz (Stephen R. Coffey* of counsel), for appellants.

*Michael West, District Attorney (Kent J. Gebert* of counsel), for respondent.

## OPINION OF THE COURT

MERCURE, J.

The principal issue to be resolved on this appeal is whether County Court denied defendants a fair trial by erroneously instructing the jury on the defense of temporary and lawful possession of a weapon. Viewing the evidence in a light most favorable to defendants, as we must with respect to the jury charge *(see, People v Steele,* 26 NY2d 526, 529), shortly after midnight on July 5, 1986 defendants and Bruce Van Allen were in the Main Rail Bar in the Village of Middleburgh, Schoharie County. A dispute arose between defendant Jon P. Snyder and Van Allen over Snyder's conduct toward a young woman in the tavern, and the two proceeded outside to fight. Snyder followed Van Allen across Main Street and into a parking lot, where Van Allen grabbed a loaded pistol from a car and aimed it at Snyder's chest. Snyder managed to get hold of Van Allen's hand and throat, and defendant Wayne R. Snyder, who had since come on the scene, took the gun from Van Allen. Jon Snyder then repeatedly struck Van Allen until he slumped to the ground. Although State Police barracks were around the corner from the bar and a telephone was available, neither defendant reported the incident to the police or to anyone in the bar. Wayne Snyder returned to the bar to retrieve his cigarettes, and defendants then walked to their home, 10 minutes away.

Defendants discussed what to do with the gun, including throwing it away or into the river, placing it in a mailbox or burying it. It appears that neither considered returning the weapon to its lawful owner, Van Allen, or turning it over to the police. Ultimately, defendants decided to further consider

the question of what to do with the weapon the following day. In the meantime, Wayne Snyder removed the clip from the revolver and placed the gun under the mattress of his bed. After being home for approximately one half hour, defendants returned to the site of the incident to see how Van Allen was doing. As they approached, they saw an ambulance and the police at the scene. After observing from a safe distance for several minutes, they returned home where they went to sleep, with the gun still under Wayne Snyder's mattress. Defendants were awakened the following morning by their mother, who indicated that the police were at the door and wanted to see them. When State Police officers asked about the gun, defendants turned it over to them and were arrested. Approximately 3½ hours elapsed between the time the weapon was taken from Van Allen and its ultimate recovery by the police.

Defendants were charged, *inter alia,* with criminal possession of a weapon in the third degree *(see,* Penal Law § 265.02 [4]). At the conclusion of the trial, County Court charged the jury on the defense of temporary and lawful possession of a weapon as follows: "I charge you that a person who obtains a weapon by wrestling it from a person who is about to attack him is not guilty of unlawful possession of that weapon. If such person possesses it temporarily with no intention to retain it, *but with the intent of promptly turning it over to a lawful authority,* then that person is not guilty of unlawful or criminal possession of a weapon. Such possession, if temporary, is lawful. Whether in this case the Defendants' possession of the weapon was temporary and lawful as I have defined that term is an issue of fact for you, the jury, to determine" (emphasis supplied). During the course of their deliberations, the jury sought further instructions on this defense. At that time, defendants objected to the original charge upon the ground that intent to turn the weapon over to lawful authorities is not a proper element of the defense and requested curative instructions. County Court denied the request. Jon Snyder was convicted of criminal possession of a weapon in the third degree, for which he was sentenced to a prison term of 2 to 6 years, and assault in the third degree, for which he received a concurrent 1-year sentence. Wayne Snyder was convicted of criminal possession of a weapon in the third degree and was sentenced to a prison term of 1½ to 4½ years. This appeal followed.

Relying on *People v Whitehead* (123 AD2d 895), defendants

maintain that County Court committed prejudicial error in instructing the jury that it could find temporary and lawful possession of a weapon only if it determined that defendants intended to promptly turn the weapon over to a lawful authority. In *People v Whitehead (supra)*, the defendant and his wife were returning home from a party when they came upon an acquaintance who was discharging a handgun. The defendant disarmed the acquaintance, gave him $5 for a taxi, retained the gun and was arrested for unlawful possession of a weapon, apparently just minutes later. The trial court had charged the jury that the defense of temporary and lawful possession is established only where the defendant had the intent to turn the subject weapon over to the lawful authorities. The Second Department found this charge erroneous, holding that "in numerous cases, defenses based on temporary and lawful possession of a weapon were held to have been established even in the absence of any intent * * * to surrender the weapon to the police" *(supra,* at 896). We agree that an intent to surrender the weapon to the police is not always necessary to establish the defense. There are a number of cases where no such requirement has been explicitly stated. Most notable are those wherein, as in this case and in *People v Whitehead (supra)*, the defendant has disarmed an assailant or an unlawful possessor of a weapon *(see, People v Almodovar,* 62 NY2d 126; *People v Persce,* 204 NY 397; *People v Monger,* 71 AD2d 641; *People v Singleteary,* 54 AD2d 1088; *People v Messado,* 49 AD2d 560).

Clearly, however, the right of possession incident to the disarming of another is highly limited in scope and duration. In *People v Harmon* (7 AD2d 159, 161), cited as authority in both *People v Almodovar (supra)* and *People v Whitehead (supra)*, the defendant was arrested shortly after disarming another in a restaurant. The trial court in *Harmon (supra,* at 161) refused the defendant's request for a charge " 'that if the possession of the blackjack by [the defendant] was obtained by disarming a wrongdoer, then that was not unlawful possession' ". The Fourth Department held that although defendant was entitled to a charge on temporary and lawful possession, this particular instruction was properly denied because "the language omitted many important factors such as *the time of disarming in relation to the time of seizure* [of the weapon by the police], *the reason for possession after disarming,* and the like" *(People v Harmon, supra,* at 161 [emphasis supplied]). Similarly, the Second Department has

justified a defendant's possession of a weapon for less than 30 minutes after he found it because he had not had enough time to properly dispose of it *(see, People v Montgomery,* 106 AD2d 410). An intent to promptly turn the weapon over to the authorities will generally be required, however, in cases where the defendant finds a weapon *(see, e.g., People v La Pella,* 272 NY 81).

■ The unqualified right of possession following the act of disarming another will end when the weapon is secured and the defendant has had an opportunity to turn it over to lawful authorities. Retention beyond that point will be justified only by an affirmative showing of intent to properly dispose of the weapon and circumstances justifying the defendant's failure to do so promptly *(see, e.g., People v Quintana,* 260 App Div 13). In this case, defendants retained the weapon after an opportunity arose to turn it over to the lawful authorities. Even if their failure to walk directly from the incident to the State Police barracks or to call the police can be excused, their purposeful avoidance of the officers they later observed on the scene cannot.

Where, as here, there is no view of the facts that supports a defense, a court may properly refuse to charge it *(see, People v Williams,* 50 NY2d 1043, 1044-1045). In our view, there is no possible hypothesis under which the jury could have found defendants' possession innocent. Although brevity of retention is a relative concept and should ordinarily be submitted to the jury *(see, supra,* at 1046 [dissenting mem]) and the People have the burden of disproving the defense beyond a reasonable doubt *(see,* Penal Law § 25.00 [1]), the evidence "is utterly at odds with [defendants'] claim of innocent possession" *(People v Williams, supra,* at 1045). Accordingly, we conclude that County Court was not obliged in this case to charge the defense of temporary and lawful possession. The charge given was, if anything, more favorable to defendants than it should have been, nullifying their claim of prejudice.

■ Similarly unavailing is defendants' contention that the sentences were unduly harsh. This court has consistently held that "[t]he imposition of the sentence rests within the sound discretion of the trial court" *(People v Harris,* 57 AD2d 663). Where, as here, there has been neither a clear abuse of discretion nor extraordinary circumstances, we should not interfere with that exercise of judgment.

MAHONEY, P. J., WEISS and LEVINE, JJ., concur.

Judgments affirmed.