■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM T. CURRY, Appellant. [924 NYS2d 217]—

McCarthy, J. Appeals from two judgments of the County Court of Broome County (Smith, J.), rendered September 29, 2009, (1) upon a verdict convicting defendant of the crimes of robbery in the second degree (two counts), criminal possession of a weapon in the second degree, assault in the third degree and criminal possession of stolen property in the fifth degree, and (2) convicting defendant upon his plea of guilty of the crime of attempted robbery in the second degree.

Defendant and two codefendants encountered the victim on the street. After exchanging gang slang with one of the codefendants, the victim pulled a gun. When a police car drove nearby, the victim put the gun in his pocket. Defendant and the codefendants then beat the victim unconscious and took his jacket, gun and cell phone. As a result, a jury convicted defendant of robbery in the second degree (two counts), criminal possession of a weapon in the second degree, assault in the third

degree and criminal possession of stolen property in the fifth degree.*

Based on an unrelated incident, defendant pleaded guilty to attempted robbery in the second degree in exchange for a sentence of three years in prison, followed by three years of postrelease supervision, to run concurrently with the agreed-upon sentences stemming from his convictions after trial. That agreement included concurrent terms of seven years in prison, followed by five years of postrelease supervision, for each of the robbery and weapon possession counts, and one-year sentences for the assault and criminal possession of stolen property counts. County Court imposed the agreed-upon sentences for all of defendant's convictions. He now appeals.

The robbery convictions were supported by legally sufficient evidence and not against the weight of the evidence. Defendant only challenges the proof regarding larcenous intent, namely that he wrongfully took property with the intent to deprive another of that property (see Penal Law § 155.05 [1]; People v Jennings, 69 NY2d 103, 118 [1986]; People v Ocasio, 265 AD2d 675, 676 [1999]). In his statement to police, defendant acknowledged that he and his codefendants knocked the victim to the ground, defendant "stole" the victim's cell phone and the codefendants took his gun. That statement constituted legally sufficient evidence of robbery (see People v Bowman, 79 AD3d 1368, 1369 [2010], lv denied 16 NY3d 828 [2011]). In his grand jury testimony that was admitted at trial, defendant asserted that they only took the gun to prevent the victim from using it. The jury was free to disregard that asserted intent and instead find a larcenous intent based upon defendant's written statements and the victim's testimony. Even if the codefendants took the gun for their stated purpose, larcenous intent regarding another item could be inferred because defendant admitted that he took the victim's cell phone, used it to text his friend, and lied to the police about possessing it and how he acquired it. Additionally, the contents of the victim's pants pockets were scattered on the ground at the scene, while defendant and the victim stated that the gun was in his jacket pocket, indicating a larcenous intent in that defendant or his codefendants rifled through the victim's pants pockets for a reason other than disarming him. Hence, the weight of the evidence supported the robbery convictions.

The criminal possession of a weapon conviction was supported by legally sufficient evidence and not against the weight of the

* This Court recently affirmed the conviction of one of the codefendants (People v Bowman, 79 AD3d 1368 [2010], lv denied 16 NY3d 828 [2011]).

evidence. After taking the gun from the victim, defendant and his codefendants possessed a loaded firearm (*see* Penal Law § 265.03 [3]). In some circumstances, however, despite possessing a proscribed weapon, a person may not be guilty due to "the innocent nature of the possession" (*People v Almodovar*, 62 NY2d 126, 130 [1984]). Temporary and lawful possession may be established where there is "a legal excuse for having the weapon . . . as well as facts tending to establish that, once possession has been obtained, the weapon ha[s] not been used in a dangerous manner" (*People v Williams*, 50 NY2d 1043, 1045 [1980]; *see People v Banks*, 76 NY2d 799, 801 [1990]). Disarming an opponent in a fight may qualify for this exception (*see People v Banks*, 76 NY2d at 800-801).

Defendant's grand jury testimony and the victim's testimony proved that a police car passed nearby after the victim pulled a gun, but defendant made no effort to flag down the officer. After taking the gun from the victim, defendant and the codefendants did not surrender it to police, nor did they show any intention to do so. Instead, while inspecting the weapon, one of the codefendants accidentally shot defendant in the arm. Rather than call an ambulance or go to the hospital, defendant spent the night drinking before someone convinced him to go to the hospital the next day. Defendant then lied to police about how he was shot, who shot him and where the gun was located. Despite defendant's grand jury testimony that he only intended to get the gun away from the victim to prevent the victim from shooting at defendant and his codefendants, the jury could have determined from their actions that, upon taking the gun, they sought to hide it and keep it rather than holding it temporarily, refuting the claim of innocent possession (*see People v Banks*, 76 NY2d at 801; *People v Snyder*, 73 NY2d 900, 901-902 [1989]). Thus, the weapon possession charge was supported by legally sufficient evidence and not against the weight of the evidence. Because defendant's behavior was inconsistent with innocent temporary possession of the gun, County Court did not err in denying his request for a jury instruction on that defense (*see People v Banks*, 76 NY2d at 800-801; *People v Snyder*, 73 NY2d at 901-902).

County Court did err, however, in denying defendant's request for a justification charge on the assault count. A trial court must consider the evidence in a light most favorable to the defendant and grant the request to charge justification if any reasonable view of the evidence might lead the jury to decide that the defendant's actions were justified (*see People v Padgett*, 60 NY2d 142, 144-145 [1983]). A defendant is justified in using

physical force upon another person when "he or she reasonably believes such to be necessary to defend himself, herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by such other person" (Penal Law § 35.15 [1]). The People have the burden of disproving this defense beyond a reasonable doubt (*see* Penal Law § 25.00 [1]). While deadly physical force cannot be used if the defendant could have safely retreated, retreat is not required prior to the use of ordinary physical force in self-defense (*see Matter of Y.K.*, 87 NY2d 430, 433 [1996]; *People v Bradley*, 297 AD2d 640, 641-642 [2002], *lv denied* 99 NY2d 556 [2002]; *People v Young*, 240 AD2d 974, 976 [1997], *lv denied* 90 NY2d 1015 [1997]; *compare* Penal Law § 35.15 [1], *with* Penal Law § 35.15 [2] [a]).

In his grand jury testimony, defendant stated that even when the victim put the gun in his pocket he was holding it in a threatening manner, defendant was afraid that the victim was going to shoot at defendant and his codefendants, and he and his codefendants jumped the victim, subdued him and took the gun to prevent him from shooting them. This testimony indicated that defendant believed that he and his codefendants were subject to the imminent use of force by the victim, which would permit him to use physical force to defend himself and his friends. Although there was strong evidence to negate this testimony, when viewing the evidence in defendant's favor, a jury could have determined that defendant was justified in using force against the victim (*see People v Padgett*, 60 NY2d at 144-145). Therefore, defendant was entitled to have County Court deliver a justification defense charge to the jury. Refusal to deliver the requested charge was reversible error (*see People v McManus*, 67 NY2d 541, 549 [1986]; *People v Watts*, 57 NY2d 299, 301 [1982]). As that charge was only requested on the assault count, we reverse and remit for further proceedings related to defendant's conviction on that count only.

Defendant correctly contends that he may withdraw his plea on the second indictment if it was induced by a promise that the sentence would run concurrently with the sentence in another case and the conviction in that other case is overturned, thereby depriving him of the benefit of his bargain (*see People v Pichardo*, 1 NY3d 126, 129 [2003]). Our reversal of the assault count does not create such a scenario. The aggregate maximum sentence flowing from his convictions after trial is unaffected by our reversal of the assault count, which resulted in a concurrent one-year sentence. Because defendant still received the

benefit of his plea bargain, he is not entitled to withdraw his plea and the judgment of conviction for attempted robbery in the second degree is affirmed.

Spain, J.P., Lahtinen, Kavanagh and Garry, JJ., concur. Ordered that the judgment rendered September 29, 2009 after trial is modified, on the law, by reversing defendant's conviction of assault in the third degree under count five of the indictment and vacating the sentence imposed thereon; matter remitted to the County Court of Broome County for a new trial on said count; and, as so modified, affirmed. Ordered that the judgment rendered September 29, 2009 upon the plea of guilty is affirmed.

