Clark, J.,
 

 Appeal from a judgment of the County Court of Franklin County (Main Jr., J.), rendered April 21, 2015, upon a verdict convicting defendant of the crimes of murder in the second degree and assault in the first degree.
 

 On the morning of November 25, 2013, defendant called 911 and reported that “she had been attacked and needed [police] assistance.” When law enforcement officials arrived at defendant’s apartment, the lifeless body of the victim — with whom defendant had been in an intimate relationship — was discovered covered by a sheet and a blanket on the floor inside the apartment. At the scene and at the police station, defendant gave oral and written statements in which she claimed that the victim had approached her aggressively with a knife and that she reacted in self-defense by hitting him with a nearby baseball bat and, later, by stabbing him with the knife. An autopsy determined that the victim suffered from, among other injuries, stab wounds and fractures to his skull and forearms and that the cause of his death was internal hemorrhage resulting from a stab wound to the chest that had punctured his lung, pericardium cavity and inferior vena cava. Defendant was subsequently indicted on charges of murder in the second degree and assault in the first degree.
 

 At the ensuing jury trial, the People argued that defendant perpetrated a “one-sided attack” against the victim, presenting evidence that the victim’s age and declining mobility would have prevented him from initiating an attack against defendant and that defendant had inflicted the fatal stab wound while the victim was lying defenseless on the ground. Defendant did not testify, but, as early as her counsel’s opening statement, argued that she had acted in self-defense. At the close of all of the proof, County Court denied defendant’s request that the jury be charged with the defense of justification. The jury ultimately returned a verdict finding defendant guilty as charged. County Court thereafter sentenced defendant to concurrent prison terms of 20 years to life for the conviction of murder in the second degree and 20 years for the conviction of assault in the first degree, to be followed by five years of post-release supervision. Defendant appeals, and we reverse.
 

 We agree with defendant that County Court committed reversible error by denying her request for a justification charge. A justification charge is required when there is any reasonable view of the evidence — whether presented by the People or the defendant (see People v Steele, 26 NY2d 526, 528-529 [1970]; People v Singh, 139 AD3d 761, 763 [2016], lv denied 28 NY3d 936 [2016]; People v Zayas, 88 AD3d 918, 921 [2011]) — that could lead a jury to conclude that the defendant reasonably believed that the victim was using or was about to use deadly physical force and that the defendant could not safely retreat, or was under no duty to retreat (see Penal Law § 35.15 [2] [a]; People v Petty, 7 NY3d 277, 284 [2006]; People v McManus, 67 NY2d 541, 549 [1986]; People v Bell, 108 AD3d 795, 796 [2013], lv denied 22 NY3d 995 [2013]). A defendant has no duty to retreat when he or she is within his or her own home and is not the initial aggressor (see Penal Law § 35.15 [2] [a] [i]; People v Aiken, 4 NY3d 324, 328 [2005]; People v Watts, 57 NY2d 299, 301 [1982]). If the defendant requests a justification charge and the evidence, viewed in the light most favorable to the defendant, supports the defense, the failure to give the charge constitutes reversible error (see People v Padgett, 60 NY2d 142, 144-145 [1983]; People v Watts, 57 NY2d at 301; People v Curry, 85 AD3d 1209, 1211-1212 [2011], lv denied 17 NY3d 815 [2011]).
 

 Viewing the evidence in the light most favorable to defendant, as we must (see People v Steele, 26 NY2d at 529; People v Ramirez, 118 AD3d 1108, 1112 [2014]), we find that there is a reasonable view of the evidence from which the jury could have concluded that defendant was justified in using deadly force against the victim. In both of her written statements to the police, which were admitted into evidence, as well as her oral statements during the 911 call and at the scene, which were testified to by the 911 dispatcher and responding officers, defendant maintained that the victim had been the initial aggressor, having entered the apartment and attacked her with a knife. Defendant consistently stated that she reacted in self-defense and out of fear for her life and that she had “a black out moment” when she repeatedly struck the victim with the bat and stabbed him with the knife. In one of her statements, she asserted that she delivered the final stab wounds after the victim stated something that sounded like “ ‘I’ll get you.’ ” In addition, as testified to by the officers involved and as evidenced by one of her written statements, defendant claimed that the victim had previously perpetrated acts of physical, sexual and emotional abuse against her. She further stated that the victim had threatened to kill her during a fight a few days earlier. Significantly, in assessing whether a defendant reasonably believed that the victim was using or about to use deadly physical force, consideration may be given to “any relevant knowledge the defendant had about [the victim],” including incidents of past violence (People v Goetz, 68 NY2d 96, 114 [1986]; see People v Miller, 39 NY2d 543, 549-553 [1976]; People v Young, 33 AD3d 1120, 1123 [2006], lv denied 8 NY3d 929 [2007]; CJI2d[NY] Penal Law § 35.15 [2], Justification: Use of Deadly Physical Force in Defense of a Person).
 

 Furthermore, although the DNA evidence established that defendant was the major contributor of DNA on the knife handle, DNA from a male donor — whose contribution was too small for identification — was found on the handle. A broken chair was also discovered at the scene, which, as testified to by a police investigator, could indicate that a struggle took place between defendant and the victim. Finally, an employee of the victim testified that, on separate occasions, he had previously observed defendant with a black eye and scratches on her neck and experienced instances in which the victim would become agitated with him if he made defendant smile or laugh. Inasmuch as the foregoing evidence could lead a jury to conclude that the victim was the initial aggressor and that defendant reasonably believed that the victim was using or about to use deadly physical force against her in her own home, County Court was required to charge the jury with the defense of justification (see People v Curry, 85 AD3d at 1212; People v Green, 98 AD2d 908, 909 [1983]; compare People v Ramirez, 118 AD3d at 1112-1113). The court’s failure to do so compels us to reverse the judgment of conviction and remit for a new trial.
 
 *
 

 Although a new trial is required, we find it necessary to further comment upon County Court’s Molineux ruling. Prior to trial, the People sought permission to present evidence, for the purposes of cross-examination and/or rebuttal, of three prior bad acts that defendant allegedly perpetrated against individuals other than the victim, including defendant’s former paramour. The court indicated that it was “likely to allow [the People] to use the incidents for purposes of impeachment on cross-examination,” depending on the substance of defendant’s direct examination, should she testify, and that the proffered Molineux evidence would speak to defendant’s anticipated testimony that she had acted in self-defense for “the purposes of intent, mistake, and lack of accident.” Thereafter, during her case-in-chief, defendant expressed an intention to call her former paramour to testify regarding an August 2013 incident in which — according to defendant’s offer of proof — the former paramour allegedly witnessed the victim “holding [defendant] down” and had to pull the victim off of defendant. The court correctly ruled that it would permit defendant to call her former paramour to present evidence of the victim’s alleged prior bad act, if it was established that defendant had knowledge of the act and it reasonably related to the crime charged (see People v Miller, 39 NY2d at 551; People v Every, 146 AD3d 1157, 1163 [2017], affd 29 NY3d 1103 [2017]). However, the court also ruled that the People would then be permitted to offer, in rebuttal, evidence regarding defendant’s three alleged prior bad acts against individuals other than the victim. Defendant subsequently withdrew her intention to call her former paramour as a witness, and she did not testify on her own behalf.
 

 County Court erred in ruling that the People would be permitted to question defendant as to the three alleged prior bad acts if she testified, and to present evidence of these alleged prior bad acts if defendant called her former paramour as a witness. Evidence of a defendant’s prior uncharged crimes or bad acts may not be admitted into evidence solely to demonstrate his or her bad character or criminal propensity, but may be admitted to establish one of the recognized Molineux exceptions — motive, intent, absence of mistake, common plan or scheme and identity — or where such proof is inextricably interwoven with the charged crimes, provides necessary background information or completes a witness’s narrative and, further, is found to be more probative than prejudicial (see People v Ward, 141 AD3d 853, 860 [2016]; People v Rivera, 124 AD3d 1070, 1073 [2015], lv denied 26 NY3d 971 [2015]). The prior bad acts alleged to have been committed by defendant were unrelated to the victim, having occurred roughly two or more years prior to the day in question, and would serve only to demonstrate that defendant had a propensity to initiate and/or engage in physical altercations. As such, County Court should have ruled that evidence of these alleged prior bad acts was inadmissible (see People v Bradley, 20 NY3d 128, 135 [2012]; People v Karuzas, 124 AD3d 927, 928-929 [2015]; compare People v Morgan, 149 AD3d 1148, 1149 [2017]; People v Burkett, 101 AD3d 1468, 1470 [2012], lv denied 20 NY3d 1096 [2013]). County Court’s errors in this regard no doubt influenced the determinations that defendant made regarding the evidence that she presented in support of her justification defense, including her decision not to testify on her own behalf and her decision not to call her former paramour as a witness. However, inasmuch as County Court committed reversible error by failing to charge the jury with the defense of justification, we need not decide whether these errors were harmless.
 

 In light of our holding, we need not address defendant’s remaining contentions.
 

 McCarthy, J.P., Garry, Mulvey and Rumsey, JJ., concur.
 

 Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Franklin County for a new trial.
 

 *
 

 During deliberations, County Court received a note from the jury asking the court to — in the court’s words — “clarify motive if it should be considered.” The record does not reflect that County Court provided counsel with meaningful notice of the content of the note, as required (see CPL 310.30; People v Mack, 27 NY3d 534, 538-539 [2016]; People v O’Rama, 78 NY2d 270, 277 [1991]). We emphasize that, to comply with the requirements of CPL 310.30 and avoid a mode of proceedings error, trial courts must “provide counsel with meaningful notice of a substantive jury inquiry by reading the precise content of the note into the record in the presence of counsel, defendant, and the jury before providing a response” (People v Mack, 27 NY3d at 539; see People v Nealon, 26 NY3d 152, 160-162 [2015]).