People v Ramirez (2024 NY Slip Op 00390)

People v Ramirez

2024 NY Slip Op 00390

Decided on January 30, 2024

Appellate Division, First Department

MENDEZ, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 30, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Jeffrey K. Oing
Ellen Gesmer Manuel Mendez Martin Shulman Julio Rodriguez III

Ind. No. 5809/13 Appeal No. 1093 Case No. 2019-05011 

[*1]The People of the State of New York, Respondent,
v
Dary Ramirez, Defendant-Appellant.

Defendant appeals from a judgment of the Supreme Court, New York County (Richard D. Carruthers, J.) rendered March 12, 2015, as amended December 17, 2015, convicting him, after a jury trial, of criminal possession of a weapon in the second degree and tampering with physical evidence, and sentencing him to concurrent terms of 3½ years and 1 to 3 years, respectively, followed by five years' post-release supervision. Defendant also appeals from a judgment of resentence, same court (Daniel Conviser, J.) rendered July 16, 2019, resentencing him on the tampering count, to a concurrent term of nine months.

Jenay Nurse Guilford, Center for Appellate Litigation, New York (Mark W. Zeno and Carl S. Kaplan of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Samuel Z. Goldfine and Karen Schlossberg of counsel), for respondent.

MENDEZ, J. 

Defendant appeals from a judgment of the Supreme Court, New York County, rendered December 17, 2015, upon a verdict after jury trial, convicting him of criminal possession of a weapon in the second degree and tampering with physical evidence. On appeal, defendant argues that the verdict convicting him on these charges was against the weight of the evidence. We agree that the verdict convicting defendant on the weapons possession charge was against the weight of the evidence and vacate that conviction.
The evidence established that defendant came into possession of the weapon in an excusable manner, that the possession was temporary, and that he did not use the weapon in a dangerous manner. The evidence established that defendant's conduct was not indicative of guilt. Thus, the People failed to prove beyond a reasonable doubt both that defendant's possession of the weapon was not temporary and lawful, and that his possession was not innocent. Therefore, the verdict on the weapons possession conviction is against the weight of the evidence.
On September 1, 2013, Domingo Moscoso assaulted his wife in her apartment in upper Manhattan. He attempted to strangle her, and his fist blows caused her to sustain a bloody, swollen lip, and bruises to her neck and face. He also threatened to shoot her. The wife got away from Moscoso and ran to a nearby neighbor's apartment, asking the neighbor to call 911 to report that Moscoso had just assaulted and threatened to shoot her.
Moscoso briefly left the scene. Approximately 15 minutes later, while she was in the street close to her apartment building, the wife saw defendant — a longtime friend of both her and Moscoso — drive by on his scooter, and she flagged him down and pleaded with him for help. Defendant decided to intervene to protect the wife.
Moscoso reappeared and defendant attempted to calm him, to no avail. Moscoso went to his parked van and retrieved an object wrapped in a white cloth. Defendant sought to protect the wife from further harm by opening the door to her apartment building and pushing her inside. She fled into the building [*2]and Moscoso chased after her. Defendant chased after Moscoso, who ran into the apartment building after the fleeing wife. Defendant caught up to Moscoso and after a struggle, took the object wrapped in the white cloth from Moscoso and tucked it into his waistband.
As shown on video surveillance footage,[FN1] defendant — gesticulating as he walked and with the white-clothed object in his waistband — followed Moscoso into an alleyway to an area in the basement behind the building. Defendant appears to be trying to calm Moscoso. He is seen hugging Moscoso who, appearing calm, turns, and grabs the object from defendant's hand.[FN2] Defendant leaves the area and Moscoso walks alone to another part of the basement, where he hides the object wrapped in the white cloth.
Shortly thereafter the police arrived, interviewed the wife, and arrested Moscoso. After viewing the video, they recovered the cloth-wrapped object, which was revealed to be a loaded operable handgun.
Five days after Moscoso was arrested, defendant appeared voluntarily at the precinct to speak to the detective in charge of the case. The detective said he was busy and asked defendant to return the next day. Before leaving, defendant provided the detective with his home address. The following day defendant was arrested at his home and was brought to the precinct, where he spoke to the detective and later in the day to the prosecutor handling the case. The day after his arrest he again voluntarily spoke to the prosecutor handling the case and provided a video statement. Defendant was charged with two counts of criminal possession of a weapon in the second degree (Penal Law § 265.03 [1][b] and [3]) and one count of tampering with physical evidence (Penal Law § 215.40 [2]).
After a jury trial, where the People relied on the video and the testimony of the arresting and investigating officers, and where defendant testified, defendant was convicted of criminal possession of a weapon in the second degree (possession outside of home or place of business) and tampering with evidence. Moscoso was separately charged and convicted of criminal possession of a weapon in the second degree.
Criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) occurs when a person "possesses any loaded firearm," outside of "such person's home or place of business." It is a defense to a charge of criminal possession of a weapon that the possession was innocent — that is, that the possession was temporary and lawful (People v Almodovar, 62 NY2d 126, 130 [1984]; People v La Pella, 272 NY 81, 83 [1936] [when the possession results temporarily and incidentally to the performance of some lawful act]). There must be proof in the record showing a legal excuse for the possession as well as facts tending to establish that, upon obtaining possession, defendant did not use the weapon in a dangerous manner (People v Williams, 50 NY2d 1043, 1044-1045 [1980]). A defendant is not required to prove that his possession [*3]of the weapon was innocent. Rather, the burden is on the People to prove beyond a reasonable doubt that the defendant knowingly possessed the weapon, and that the possession was not innocent (People v Holes, 118 AD3d 1466, 1467 [4th Dept 2014]).
Here, the evidence established that defendant's possession of the weapon after disarming Moscoso was incidental, temporary, and lawful, and that he did not use the weapon in a dangerous manner. The trial court instructed the jury on "temporary and lawful possession of a weapon" by giving the charge as it appears in the Criminal Jury Instructions (CJI 2d [NY] Temporary and Lawful Possession), which states in relevant part:
"A person has innocent possession of a weapon when that person comes into possession of the weapon in an excusable manner, and maintains possession, or intends to maintain possession, of the weapon only long enough to dispose of it safely."
The charge does not define "safely." Instead, it provides a list of non-dispositive factors for the jury to consider — essentially an "amalgam of elements" — with only some relating to how the defendant disposed of the weapon, suggesting that trial courts should expand on or alter the charge where necessary to fit the facts of the case (see People v Whitehead, 123 AD2d 895, 896 [2d Dept 1986]); see also People v Williams, 36 NY3d 156, 167-168 [2020] [Wilson, J. concurring]). None of the cases cited in the footnotes to the temporary and lawful possession charge specifically define "safely" or hold or require that the weapon be turned over to the authorities when the defendant has not had an opportunity to do so. The cases cited by the CJI require only that there be proof in the record showing a legal excuse for the defendant to have the weapon in his or her possession and that the possession be temporary, as well as facts tending to establish that, once possession has been obtained, the weapon has not been used in a dangerous or reckless manner (see Williams, 50 NY2d at 1045; People v Rose, 191 AD3d 697, 698-699 [2d Dept 2021], lv denied 36 NY3d 1123 [2021]; People v Bonilla, 154 AD3d 160, 165-166 [1st Dept 2017], lv denied 30 NY3d 1017 [2017]; Holes, 118 AD3d at 1468).
As stated by the Court of Appeals, addressing its concern about the incidence of wrongful convictions and the prevalence with which they have been discovered in recent years:
"The unfortunate fact is that juries occasionally do not return proper verdicts. An important judicial bulwark against an improper criminal conviction is not only the restrictive scope of review undertaken during a sufficiency analysis, but the protection provided by weight of the evidence examination in an intermediate appellate court. This special power requires the court to affirmatively review the record; independently assess all the proof; substitute its own credibility determinations for those made by the jury in an appropriate case; determine whether the verdict was factually correct[*4]; and acquit a defendant if the court is not convinced that the jury was justified in finding that guilt was proven beyond a reasonable doubt. . . . A conviction that was not in accord with the weight of the evidence results in an unreviewable order that rectifies an unjust conviction and precludes subsequent re-prosecution" (People v Delamota, 18 NY3d 107, 116-117 [2011] [internal citation omitted]).
In conducting our weight of the evidence review, we must view the evidence in a neutral light and evaluate whether all the elements of the crime for which the defendant was convicted were proven beyond a reasonable doubt, especially where, as here, a different verdict would not have been unreasonable (People v Danielson, 9 NY3d 342, 348-349 [2007]; People v Williams, 156 AD3d 1224, 1225-1226 [3d Dept 2017], lv denied 31 NY3d 1018 [2018]).
This verdict convicting defendant of criminal possession of a weapon in the second degree was not factually correct; it was based on conjecture and surmise and is against the weight of the evidence. Initially, the People failed to prove beyond a reasonable doubt that defendant's possession was not innocent. The evidence established that defendant lawfully obtained possession of the weapon by disarming Moscoso and acted to protect the wife. He continued to protect her even after Moscoso regained possession of the weapon by remaining on the scene and talking to Moscoso, trying to convince him to cooperate with the police. During the brief period he possessed the weapon he did not use it in a dangerous, reckless, or unlawful manner and only retained possession long enough to deescalate the dispute and to prevent greater harm to the wife (see People v Pemberton, 144 AD2d 222, 223 [3d Dept 1988]).
Defendant did not transport the weapon through the streets or the subway (People v Banks, 76 NY2d 799, 801 [1990]), or point it at anyone in a threatening manner (People v Pereira, 220 AD2d 696 [2d Dept 1995], lv denied 87 NY2d 1023 [1996]), or hide it for the purpose of retrieving it at a later time (Pemberton, 144 AD2d at 223), or fire it (People v Ruiz, 39 NY3d 981, 983-984 [2022]; Williams, 36 NY3d at 158; Williams, 50 NY2d at 1043; People v Curry, 85 AD3d 1209, 1211 [3d Dept 2011], lv denied 17 NY3d 815 [2011]), or otherwise attempt to use it in a manner that placed others at risk (People v Aracil, 45 AD3d 401, 401-402 [1st Dept 2007], lv denied 9 NY3d 1030 [2008]). Nor did the People present evidence that anyone was injured by defendant's fleeting possession (see Holes, 118 AD3d at 1468).
Although some of the cases relied on by the dissent make mention of the CJI, in those cases defendant was denied the benefit of the defense because defendant either did not come into possession of the weapon in an excusable manner, did not possess the weapon temporarily, or used the weapon in a dangerous manner (see Williams, 36 NY3d 156 at 161; Ruiz, 39 NY3d at 984).
Moreover, an intent to surrender a weapon to the police [*5]is not an essential element of the defense of temporary and lawful possession (Pemberton, 144 AD2d at 223; People v Thomas, 172 AD2d 572, 573 [2d Dept 1991], lv denied 78 NY2d 927 [1991]). Furthermore, disposing of a weapon without turning it into the authorities when the defendant has not had an opportunity to do so, or by throwing the weapon and ammunition in the trash does not convert a temporary lawful possession into an illegal possession (see Rose, 191 AD3d at 699; cf. People v Gonzalez, 262 AD2d 1061, 1061-1062 [4th Dept 1999], lv denied 93 NY2d 1018 [1999] [rather than turning the weapon over to authorities, defendant hid it in the basement]; People v Roccaforte, 141 AD2d 775, 776 [2d Dept 1988] [defendant's claim that he intended to surrender the weapon to the police is not supported by the fact that he walked past several precincts]).
The evidence established that defendant did not hide the weapon; it was done by Moscoso alone, without defendant's aid or intervention. As was shown in the surveillance video, defendant was not present when Moscoso hid the weapon and would not know the actual hiding location. Defendant did not prevent the police from locating the weapon. He testified at trial that he told a Spanish-speaking officer that Moscoso had a dangerous object and to look in the basement area, actively cooperating with police at the scene and on more than one occasion giving statements regarding the events of that day to police and the People (see Holes, 118 AD3d at 1468).
The People's argument to the jury in summation that defendant conspired with Moscoso to help hide the weapon, and the dissent's argument that he permitted Moscoso to repossess the weapon without resisting are both based on conjecture and surmise. This is particularly so because defendant testified that Moscoso took the object from him; the video does not clearly depict how Moscoso regained the object; the video is silent and therefore neither the police, the People, nor the jury could hear what was being said; and the law does not require that defendant physically resist the taller, heavier and stronger Moscoso's attempt to regain possession.[FN3] The evidence in this case is not "utterly at odds with any claim of innocent possession." Therefore, the conviction of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) should be vacated.
Defendant's apparent destruction of fingerprint evidence supported the tampering conviction (see People v Eaglesgrave, 108 AD3d 434, 434 [1st Dept 2013], lv denied 21 NY3d 1073 [2013]) but does not negate his defense of innocent possession (Rose, 191 AD3d at 699). Defendant's challenge to the denial of his CPL § 330.30 motion to set aside the verdict is unpreserved, and we decline to review it in the interest of justice. As an alternative holding, we find that the court providently exercised its discretion in denying defendant's motion without a hearing. The purported newly discovered evidence was not new[*6], as the substance of the wife's letter was known to the defendant prior to trial and was largely introduced through other witnesses' testimony (see CPL 330.30 [3]; People v Salemi, 309 NY 208, 215-216 [1955], cert denied 350 US 950 [1956]).
Accordingly, the judgment Supreme Court, New York County (Richard D. Carruthers, J.) rendered March 12, 2015, as amended December 17, 2015, convicting defendant, after a jury trial, of criminal possession of a weapon in the second degree and tampering with physical evidence, and sentencing him to concurrent terms of 3½ years and 1 to 3 years, respectively, followed by five years' post-release supervision, and the judgment of resentence, same court (Daniel Conviser, J.) rendered July 16, 2019, resentencing defendant on the tampering count, to a concurrent term of nine months, should be modified, on the facts, to the extent of vacating the conviction of criminal possession of a weapon in the second degree and dismissing that count, and otherwise affirmed. The order of the same court (Daniel Conviser, J.) entered December 17, 2015, which denied defendant's motion pursuant to CPL 330.30(3) to set aside the verdict and order a new trial, should be affirmed.
All concur except except Oing, J.P. and Shulman, J., who dissent in an Opinion by Shulman, J.

 

SHULMAN, J. (dissenting)
 

Defendant's acquaintance — the wife of his friend and codefendant Domingo Moscoso — flagged down defendant as he drove past her building. Her face was marked, her mouth was bleeding, and her neck was bruised. She informed defendant that Moscoso had beaten her, attempted to strangle her, and broke everything in the house. She told defendant that she had already called the police. When Moscoso arrived outside the building, he continued his aggressive behavior and retrieved an item — later revealed to be a gun — wrapped in a white cloth from a vehicle parked across the street. Defendant testified that he feared that Moscoso would "inflict[ ] further damage on the [wife] that was already beaten" and that he "thought that [Moscoso] was going to harm her, do something really bad." Defendant thus intervened, taking the object from Moscoso. Yet mere moments later, despite his stated fears for the wife's safety, defendant quickly followed Moscoso into an alleyway area behind the building, where video surveillance captures him wiping down the gun inside the white cloth, and either handing it back to Moscoso or letting Moscoso take it from him without resistance. Defendant testified that he knew Moscoso then "went and hid it somewhere." A jury convicted defendant of criminal possession of a weapon in the second degree and tampering with physical evidence, rejecting defendant's defense (which was charged to the jury) that he only temporarily and lawfully possessed the weapon.
The majority does not dispute that the prosecution established the elements of criminal possession of a weapon in the second degree, namely, that defendant "possesse[d] [*7]any loaded firearm" outside of his "home or place of business" (Penal Law § 265.03 [3]). Rather, the majority holds that the verdict is against the weight of the evidence and should be reversed because the prosecution did not prove beyond a reasonable doubt that defendant's possession was not innocent. This holding effectively permits the reckless disposal of a weapon as a defense to the criminal possession of that weapon. I respectfully dissent.
I.
The defense of temporary and lawful possession is a "narrowly-drawn defense designed to protect those who did not seek to possess a weapon but find themselves in possession of a weapon by happenstance or by taking it from an assailant; then, once in possession, they intend to dispose of the firearm safely and they do so without unreasonable delay; and finally, they do not utilize the weapon in a dangerous manner or expose others to the dangers incident to the continued possession of the weapon" (William C. Donnino, Prac Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 265.01 at 118-120 [2017 ed] [emphasis added]).
Courts have established, for purposes of this defense, that a defendant cannot recklessly or dangerously handle the weapon after gaining possession (see e.g. People v Ruiz, 39 NY3d 981, 984 [2022] [a temporary and lawful possession charge was not warranted where the defendant handled the weapon in a "reckless and dangerous" manner and created a risk of injury to others]; People v Williams, 50 NY2d 1043, 1045 [1980] [a temporary and lawful possession charge was not warranted where the defendant handled the weapon "in a manner which may be charitably characterized as reckless"]; People v Williams, 36 NY3d 156, 161 [2020] [the defense is not available unless, once possession has been obtained, "the weapon has not been used in a dangerous manner"] [citing Williams, 50 NY2d 1043]).
Even where a defendant initially possesses a weapon "under circumstances that could be deemed justified," the defendant cannot then possess the weapon in an unlawful manner (see People v Banks, 76 NY2d 799, 800-801 [1990] [a reasonable jury could not find the defendant's possession of a gun to be temporary and lawful where the defendant initially justifiably acquired the gun to prevent its use during a fight, but later concealed the weapon to "throw it down a sewer"]; People v Aracil, 45 AD3d 401, 401-402 [1st Dept 2007], lv denied 9 NY3d 1030 [2008] [defendant's initially justified possession of the weapon after disarming an aggressor was negated by her "subsequent act," which introduced the "loaded firearm into a volatile situation"]).
"In accordance with those principles, the pattern jury charge relating to temporary and lawful possession explains that '[a] person has innocent possession of a weapon when [that person] comes into possession of the weapon in an excusable manner and maintains possession, or intends to maintain possession, of the weapon only long enough to dispose of it safely'" (Williams[*8], 36 NY3d at 161 [quoting CJI2d(NY) Temporary and Lawful Possession] [emphasis added]; see also People v Bonilla, 154 AD3d 160, 161-162, 166 [1st Dept 2017], lv denied 30 NY3d 1017 [2017] [setting forth the identical CJI charge]; People v Mack, 177 AD3d 1155, 1157 [3d Dept 2019] [setting forth the identical CJI charge]). Amendments to the pattern jury charge made in December 2023 also explain that a jury may consider whether a defendant, after obtaining possession of the weapon, acted in a "reckless and dangerous manner" (CJI2d[NY] Temporary and Lawful Possession n 7 [citing Ruiz, 39 NY3d at 984]).
At defendant's request, Supreme Court charged the jury regarding defendant's defense of temporary and lawful possession. Supreme Court directly adhered to the pattern jury charge endorsed by the Court of Appeals, charging the jury that the temporary and lawful possession of a weapon lasts "only long enough to dispose of it safely." At no point did defendant object to Supreme Court's jury charge in substance, form, or otherwise. In fact, the jury clearly grappled with this issue, asking Supreme Court for clarification on the jury charge. Upon such clarification, defendant again did not object to any aspect of the jury charge. Accordingly, defendant did not preserve any challenge to any of the elements of the charge as read to the jury (see e.g. People v Harper, 7 NY3d 882, 882-883 [2006] ["During his preliminary instructions to the jury, the trial judge outlined the elements of each of the . . . counts with which the defendant was charged. Because defendant failed to object to these instructions, his contention is unpreserved for our review"]; see also People v Almodovar, 62 NY2d 126, 132 [1984] [trial court properly clarified jury instructions upon jury's request and where the defendant failed to make any additional request for instruction]).
The majority avoids these critical facts, asserting that neither the pattern jury instructions nor relevant case law define "safely." Rather, the majority notes, case law only requires that "once possession has been obtained, the weapon has not been used in a dangerous or reckless manner." Under this framework, the majority holds that defendant "lawfully obtained possession of the weapon by disarming Moscoso" and that "[d]uring the brief period he possessed the weapon he did not use it in a dangerous, reckless, or unlawful manner," possessing it only "long enough to deescalate the dispute and to prevent greater harm to the wife."
It is of no moment that the term "safely" is not defined (see People v Mitchell, 38 NY3d 408, 426 n 11 [2022] [Rivera, J., dissenting] [inferring that the absence of the definition of a particular word in a criminal jury instruction "reflect[s] the obviousness of the meaning of [the word] to contemporary juries"]). It stretches the bounds of an intermediate appellate court's "weight of the evidence" review to hold that a reasonable jury could not have found that the defendant did not[*9]"safely" dispose of the weapon here, applying the obvious, common-sense definition of the word. As stated earlier, defendant testified that he feared Moscoso would "inflict[ ] further damage on the [wife] that was already beaten" and that he "thought that [Moscoso] was going to harm her, do something really bad." Yet, just minutes after disarming a domestic abuser to protect the victim, defendant allowed the abuser to regain possession of the weapon in the midst of an ongoing abuse incident. But for the intervening arrest and the police's post-arrest investigation and recovery of the hidden gun, Moscoso easily could have retrieved the gun and finished what he originally attempted, i.e., to use the gun to kill or seriously injure his wife (see Ruiz, 39 NY3d at 984 [possession was not temporary or lawful where the defendant's reckless actions created a risk that others could be injured]). This cannot be considered "safe."
A reasonable jury could also conclude that defendant sought to give Moscoso an opportunity to hide the weapon before the police arrived (see People v Curry, 85 AD3d 1209, 1211 [3d Dept 2011], lv denied 17 NY3d 815 [2011] [declining to provide a jury instruction on temporary and innocent possession where the defendant testified that he only intended to "get the gun away from the victim," but a "jury could have determined from their actions that, upon taking the gun, they sought to hide it and keep it rather than holding it temporarily"]). Conversely, a reasonable jury could conclude that defendant recklessly permitted Moscoso to repossess the weapon, again placing the wife in imminent danger. In either circumstance, while defendant's initial possession was justified, a jury could — and presumably did — reasonably find that his subsequent act was "dangerous, reckless or unlawful" and "utterly at odds with any claim of innocent possession" (see Banks, 76 NY2d at 800-801; Williams, 50 NY2d at 1045; Aracil, 45 AD3d at 401-402).
II.
The majority next distinguishes this case from a line of cases where possession was not temporary and lawful. Those cases, however, only establish that there are a wide range of case-specific reasons that may negate a temporary and lawful possession defense. It is clear that a defendant may not even be entitled to a temporary and lawful possession jury charge as a defense to criminal possession of a weapon despite never actually using or firing the gun, as in this case (see e.g. Banks, 76 NY2d at 800-801 [no right to instruction where the defendant prevented use of gun by others during an altercation and merely intended to carry the gun elsewhere to dispose of it in a sewer]; People v Snyder, 73 NY2d 900, 901-902 [1989] [no right to instruction where the defendants disarmed the original possessor of a loaded gun during an altercation and merely kept the gun under a bed overnight]; Aracil, 45 AD3d at 401-402 [no right to instruction where the defendant disarmed the original possessor of a gun during an altercation [*10]and merely introduced the "loaded firearm into a volatile situation"]).
Nor did the prosecution need to "present evidence that anyone was injured by defendant's fleeting possession," as implied by the majority (cf. People v Holes, 118 AD3d 1466 [4th Dept 2014] [cited by majority]; see e.g. Banks,76 NY2d at 800-801 [no one injured during defendant's possession of the weapon]; Snyder, 73 NY2d at 901-902 [same]; Aracil, 45 AD3d at 401-402 [same]; Curry, 85 AD3d at 1211 [same]; People v Hicks, 110 AD3d 1488, 1488 [4th Dept 2013], lv denied 22 NY3d 1156 [2014] [same];
People v Pemberton, 144 AD2d 222, 223 [3d Dept 1988] [same]; People v Pereira, 220 AD2d 696, 697 [2d Dept 1995], lv denied 87 NY2d 1023 [1996] [same]).
III.
The jury's rejection of defendant's temporary and lawful possession defense does not transform "intent to surrender a weapon to the police" into an "essential element," nor do courts require such (see People v Snyder, 138 AD2d 115, 118 [3d Dept 1988], affd 73 NY2d 900 [1989] ["an intent to surrender the weapon to the police is not always necessary to establish the defense. There are a number of cases where no such requirement has been explicitly stated"]). However, while intent is not an "essential element," it would undermine the very purpose of the defense to hold that defendant, knowing the wife called the police to the premises, could innocently permit the gun to return to Moscoso's possession ahead of the police's arrival (see Williams, 36 NY3d at 161 ["the underlying purpose of the charge is to foster a civic duty on the part of citizens to surrender dangerous weapons to the police"] [quoting Williams, 50 NY2d at 1045]).
In accordance with this underlying purpose of the defense, courts have held that the "right of possession incident to the disarming of another is highly limited in scope and duration" (Snyder, 138 AD2d at 118, citing People v Harmon, 7 AD2d 159, 161 [4th Dept 1959] [holding that the trial court's jury charge "omitted many important factors such as the time of disarming in relation to the time of seizure"]). "The unqualified right of possession following the act of disarming another will end when the weapon is secured and the defendant has had an opportunity to turn it over to lawful authorities. Retention beyond that point will be justified only by an affirmative showing of intent to properly dispose of the weapon and circumstances justifying the defendant's failure to do so promptly" (Snyder, 138 AD2d at 119, citing People v Quintana, 260 App Div 13, 15-16 [1st Dept 1940] [possession deemed temporary and lawful where the defendant held onto the weapon longer for the purpose of turning it over to officials of his employer]).
The Court of Appeals in Snyder (73 NY2d at 901-902) affirmed the Third Department and held that defendants were not entitled to a jury charge for temporary and lawful possession where the defendants obtained the gun by disarming an aggressor during an altercation and held onto the [*11]gun overnight, despite an opportunity to turn the gun over to the police at the scene of the altercation thirty minutes later.
The majority notes defendant's testimony that he told a police officer that Moscoso had a dangerous object and to look in the basement area.[FN4] Defendant, however, could not remember any identifying information about this officer to corroborate this claim. Indeed, the police officer who located the weapon testified that it was the wife who informed him that a gun was pointed at her. After she alerted him to the gun, the officer unsuccessfully searched the premises and ultimately located the weapon upon his review of surveillance footage. A reasonable jury could conclude that defendant did not actually inform any officer of the location of the weapon, necessitating the officer's thorough investigation and recovery efforts. It is well within the confines of presented evidence to conclude that defendant, knowing the police were en route, intended to help Moscoso hide the gun and did not inform the police, despite any self-serving testimony otherwise.
Based on the foregoing, I would affirm the jury's conviction as supported by the weight of the evidence and affirm Supreme Court's judgment of resentence.
Judgment Supreme Court, New York County (Richard D. Carruthers, J.) rendered March 12, 2015, as amended December 17, 2015, rendered July 16, 2019, resentencing defendant on the tampering count, to a concurrent term of nine months, modified, on the facts, to the extent of vacating the conviction of criminal possession of a weapon in the second degree and dismissing that count, and otherwise affirmed. The order of the same court (Daniel Conviser, J.) entered December 17, 2015, which denied defendant's motion pursuant to CPL 330.30(3) to set aside the verdict and order a new trial, affirmed.
Opinion by Mendez, J. All concur except Oing, J. P. and Shulman, J. who dissent in an Opinion by Shulman, J. Oing, J.P, Gesmer, Mendez, Shulman, Rodriguez, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 30, 2024

Footnotes

Footnote 1: The video compilation, which is silent, is approximately five minutes long and covers approximately seven minutes of real time.

Footnote 2: The video does not definitively show if defendant gave Moscoso the object or if Moscoso grabbed it from defendant. Defendant testified at trial that Moscoso grabbed the object from him.

Footnote 3: In the video, Moscoso appears to be taller and heavier than defendant.

Footnote 4: The majority also claims that defendant did not prevent the police from locating the weapon, and actively cooperated with the police. Defendant, however, was handcuffed, placed in a police vehicle, and issued a summons for disorderly conduct after interfering with the police during Moscoso's arrest.