People v Bonilla (2017 NY Slip Op 06405)





People v Bonilla


2017 NY Slip Op 06405


Decided on September 5, 2017


Appellate Division, First Department


Kapnick, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 5, 2017
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Peter Tom,J.P.
John W. Sweeny, Jr.
Rosalyn H. Richter
Barbara R. Kapnick
Troy K. Webber, JJ.


2609/12 4104 

[*1]The People of the State of New York, Respondent,
v
Luis Bonilla, Defendant-Appellant.



Defendant appeals from the judgment of the Supreme Court, Bronx County (George Villegas, J.), rendered November 22, 2013, convicting him, after a jury trial, of criminal possession of a weapon in the second degree, and imposing sentencing.




Cardozo Criminal Appeals Clinic, New York (Stanley Neustadter of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Emily Anne Aldridge and Rafael Curbelo of counsel), for respondent.



KAPNICK, J.


Defendant was charged with manslaughter in the first degree and two counts of criminal possession of a weapon in the second degree, based on allegations that he fatally shot the decedent. At trial, defendant asserted a justification defense to the manslaughter charge, the court instructed the jury accordingly, and the jury acquitted defendant of manslaughter. Defendant also requested an instruction on "innocent possession" of a weapon. The court, however, declined to charge temporary lawful possession of a weapon, finding that there was no reasonable view of the evidence that would warrant it. The jury subsequently acquitted defendant of one count of criminal possession of a weapon in the second degree (intent to use unlawfully against another), but convicted him of the other count of criminal possession of a weapon (possession not in home or business). Defendant thereafter was sentenced to a term of 7½ years.
The Criminal Jury Instruction charge for Temporary and Lawful Possession of a Weapon states in relevant part:
"A person has innocent possession of a weapon when he or she comes into possession of the weapon in an excusable manner and maintains possession, or intends to maintain possession, of the weapon only long enough to dispose of it safely.
"There is no single factor that by itself determines whether there was innocent possession. In making that determination, you may consider any evidence which establishes that the defendant had knowing possession of a weapon, the manner in which the weapon came into the defendant's possession, the length of time the weapon remained in his/her possession, whether the defendant had an intent to use the weapon unlawfully or to safely dispose of it, the defendant's opportunity, if any, to turn the weapon over to the police or other appropriate authority, and whether and how the defendant disposed of the weapon.
"The defendant is not required to prove that his possession of the weapon was innocent. Rather, the People are required to prove beyond a reasonable doubt both that the defendant knowingly possessed the weapon and that such possession was not innocent."
The trial court, when determining whether to give a charge on a claimed defense, "must view the evidence in the light most favorable to the defendant," and "[u]pon defendant's request, the court must instruct the jury on the defense if it is sufficiently supported by the evidence; failure to do so may constitute reversible error" (People v Butts, 72 NY2d 746, 750 [1988]). Here, there was a reasonable view of the evidence to support defendant's request for an instruction on temporary and lawful possession of a weapon. To trigger the right to such a charge, "there must be proof in the record showing a legal excuse for having the weapon in [defendant's] possession as well as facts tending to establish that, once possession has been obtained, the weapon had not been used in a dangerous manner" (People v Williams, 50 NY2d 1043, 1045 [1980]).
In essence, the evidence at trial was that on the evening of January 8, 2012, in the vicinity of 924 East 181st Street in Bronx County, after being pushed around by the decedent, defendant and the decedent struggled over a gun, during which struggle defendant retrieved the gun from the decedent, and walked away with it. Shortly thereafter, defendant, while still on the same block on East 181st Street, was approached by the decedent and three or four other men. Another struggle ensued, and defendant removed the gun from his waist and shot two men, one of whom died.
The People presented numerous witnesses at trial, including two brothers, both of whom knew defendant and the decedent, and on the night of the incident were having dinner at their mother's apartment on East 181st Street. Both brothers testified that they heard voices and a commotion coming from outside, and that when they looked out the window, they saw the decedent, who said his gun had been taken. One of the brothers went outside to talk to the decedent, who then proceeded to cross the street and walk down the block towards defendant. The brothers had a clear view of the street and the area was well lit. The brothers testified that they could see defendant, the decedent, a man in a blue and white striped shirt, and another man. The man in the blue and white striped shirt was holding defendant from behind. Defendant then freed himself, pulled out a gun, turned around and shot the man in the striped shirt and then shot the decedent.
Another witness for the People testified that on the evening of January 8, 2012, she heard [*2]yelling coming from outside, that she looked out her third floor window, and saw defendant, who, according to the witness, appeared to be very angry. Defendant was on his cell phone and the witness testified that he was yelling the word "done." The witness further testified that when defendant hung up, a car pulled up, a man got out and he and defendant began talking. The man then came up from behind defendant and grabbed him. The witness saw that defendant had a gun, which he then used to shoot the man that had been holding him. The witness testified that she heard another shot fired, but her view was partially obstructed so she did not see the second shot being fired, or who or what it hit.
Defendant testified at trial as well. He stated that he knew the decedent, but that they were not close friends. Defendant would hang out with the decedent and their mutual friends in the basement at 924 East 181st Street. On two separate occasions defendant had seen the decedent and one or two other men pull out guns to show to the group.
On January 8, 2012, the decedent called defendant on the phone and asked him to come to the basement hang out spot. When defendant arrived, the decedent pushed him and told him to "shut up, walk." The two then engaged in a pushing match, during which the decedent fell back onto some bags. The decedent then stood up, withdrew a gun from his pocket and hit defendant with the gun on the hand and face. A further struggle ensued, the gun fell on a bag and defendant grabbed it and walked away. Defendant testified that as he was walking he put the gun in his pocket, then a car pulled up carrying two men, both of whom defendant knew. Shortly thereafter, the decedent arrived with two other men. One of the men came up from behind and grabbed defendant, forcing his hands behind his back, and told the other men, "[L]et's take him to the basement." Defendant further testified that he saw that the decedent had his hand inside his jacket and defendant thought that the decedent was reaching for another gun. Defendant then struggled to free himself, reached for the gun in his pocket and fired two shots. Defendant also testified that during the struggle on the sidewalk he feared for his life, that he did not try to hurt or shoot anyone, and that he was merely trying to get away. After defendant fired the gun twice, he ran away, turned on the following corner and dropped the gun on the street.
Surveillance footage from the vicinity of 924 East 181st Street showed the initial tussle between defendant and the decedent, the decedent falling to the ground, getting back up and the two men struggling over the gun. Defendant took the gun from the decedent and then walked away with it in his hand. The decedent went back into the basement apartment and then re-emerged with another man, and the two of them walked in the direction that defendant had gone approximately two minutes prior. Moreover, the video footage indicates that the entire period, from the initial struggle for the gun in front of 924 East 181st Street, to the firing of the gun on the street corner less than a block away when defendant was again accosted, was only approximately three minutes.
When this evidence is viewed in the light most favorable to defendant, nothing he did or failed to do in the very brief interval between excusably obtaining the pistol and being confronted by the decedent and his companions constituted "us[ing the pistol] in a dangerous manner" (Williams, 50 NY2d at 1045). Given the justification defense, which, as the court correctly determined, warranted a justification charge, the fact that defendant shot the decedent did not constitute a "dangerous use" barring the court from giving a temporary lawful possession charge. Courts have found that the firing of shots did not negate a defendant's entitlement to a temporary lawful possession instruction where the shooting was justified and the possession was otherwise lawful. For example, in People v Almodovar (62 NY2d 126, 130 [1984]) the Court found that it was proper to instruct the jury on temporary and lawful possession where the defendant claimed that he had fired several pistol shots in self-defense with a pistol that he had wrested from his attacker (see also People v Messado, 49 AD2d 560 [1st Dept 1975]). So long as possession is lawful at the time that the shots are fired, and so long as the firing itself is lawful (i.e. justified), it [*3]will not defeat the right to the instruction (see People v Almodovar, 62 NY2d at 130; People v Messado, 49 AD2d at 560; People v Sackey-El, 149 AD3d 1104 [2d Dept 2017]).
Nor, in this case, does defendant's brief retention and subsequent use of the weapon support a finding that the jury instruction was not warranted, because the evidence did not indicate a "transitory lawful possession, and no use of the weapon in a dangerous manner" (People v Karim, 176 AD2d 670, 671 [1st Dept 1991], lv denied 79 NY2d 859 [1992]). Cases in which such a determination has been warranted are distinguishable. In Karim, the defendant, "armed with a loaded pistol, engaged in an argument with the complainant that elevated into a wrestling match. During this struggle, the gun discharged three times and defendant admitted to the police that he had intentionally fired the gun twice, to frighten the complainant" (176 AD2d at 671). Naturally, under these circumstances, the Court found that there was no possible view of the evidence to indicate a "transitory lawful possession, and no use of the weapon in a dangerous manner" (id.).
In People v Aracil (45 AD3d 401 [1st Dept 2007], lv denied 9 NY3d 1030 [2008]), the defendant acquired the weapon from a man with whom she was struggling and proceeded to enter an apartment building with the loaded weapon for the purpose of intervening in a fight between her stepfather and other persons, thereby introducing the loaded weapon into a separate and volatile altercation. Understandably, the Court determined that this evidence was "utterly at odds with any claim of innocent possession . . . temporarily resulting from disarming a wrongful possessor" (id. at 401-02, [internal quotation marks omitted]). Other cases in which the court has determined that the defendant maintained possession of the weapon for the purpose of using it, thereby rendering the innocent possession charge unwarranted, involved scenarios in which the defendant concealed the weapon on his person and proceeded to transport it through the streets and on the subway into a different borough, claiming he was going to throw it in the sewer (People v Banks, 76 NY2d 799 [1990]); or the defendant secreted the weapon in a couch, later moved it to a new hiding place in the apartment and thereafter took out the gun to show off his cowboy-like gun handling skills to his friends (People v Williams, 50 NY2d at 1043). Defendant here did not engage in any conduct that is even remotely similar.
Moreover, defendant's possession of the gun was not somehow rendered unlawful because he failed to make efforts to turn the weapon over to authorities or to retreat to his apartment during the approximately three minutes the gun was in his possession. First, there is no indication in the record that authorities were present or even within close proximity (cf. People v Snyder, 73 NY2d 900 [1989] [finding no reasonable view of the evidence under which the jury could have found possession of the weapon innocent where, inter alia, there was no effort to report to State Police even though the "barracks were around the corner from the bar and [the] police were at the scene when defendants returned there one-half hour later."]). Second, there is no support in the case law for the proposition that defendant was required to bring the gun into his home and somehow seek refuge there. Here, the trier of fact could have reasonably determined, based on the evidence, that defendant's brief retention of the gun was consistent with possession incidental to the manner in which the gun was obtained. Indeed, the CJI for Temporary and Lawful Possession cites such factors for the jury to consider as "the length of time the weapon remained in his/her possession" and "the defendant's opportunity, if any, to turn the weapon over to the police or other appropriate authority." Thus, in this case, the lawfulness of defendant's possession presented a factual issue to be resolved by the jury.
Accordingly, the judgment of the Supreme Court, Bronx County (George Villegas, J.), rendered November 22, 2013, convicting defendant, after a jury trial, of criminal possession of a [*4]weapon in the second degree, and sentencing him to a term of 7½ years, should be reversed, on the law, and the matter remanded for a new trial.
All concur.
Judgment, Supreme Court, Bronx County (George Villegas, J.), rendered November 22, 2013, reversed, on the law, and the matter remanded for a new trial.
Opinion by Kapnick, J. All concur.
Tom, J.P., Sweeny, Richter, Kapnick, Webber, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: SEPTEMBER 5, 2017
CLERK