# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 92
The People &c.,
     Respondent,
      v.
Lance Williams,
     Appellant.

John M. Briggs, for appellant.
David A. Slott, for respondent.

STEIN, J.:

No reasonable view of the evidence presented at trial supported a conclusion that

defendant's initial possession of the firearm in question was innocent or excusable.

Therefore, the courts below properly held that defendant was not entitled to a jury charge

regarding temporary and lawful possession, and we affirm.

Defendant was charged with several counts of attempted murder, assault, and criminal possession of a weapon in the second degree after he shot an acquaintance, Leon Carson, as well as a bystander, in the lobby of a large apartment building. Viewed in the light most favorable to defendant, the evidence established that, on the day of the shooting, defendant was visiting the apartment of a friend, known as "Foe." As defendant left the building, he saw Carson standing outside with another man. Defendant and Carson, along with Carson's brother, had a history of violent confrontations. More specifically, defendant had been shot by Carson's brother on two separate occasions approximately five years earlier, and defendant knew that Carson believed him to be the perpetrator of a shooting the same year that left Carson, himself, wounded.

Defendant testified that, when he was exiting the building, he saw Carson outside and observed Carson pull a gun out of his pocket. Defendant retreated back through the lobby, and returned to Foe's apartment on an upper floor, where he told Foe that Carson was outside with another man in a blue coat, and that Carson had "pulled a gun." Although defendant asked Foe to call the police, hoping that their presence might prompt Carson to leave the area, Foe refused. When Foe's partner requested that defendant leave, Foe grabbed a loaded gun, "cocked it," and "put it on his waist," telling defendant that he would walk him out to his car. Foe and defendant descended the stairwell to the lobby. Looking into the lobby, Foe saw a man in a blue jacket and relayed his presence to defendant. Foe then handed the gun to defendant, who accepted it without objection, and instructed defendant to walk behind him.

Approximately seven minutes after seeing Carson outside the building, defendant exited the stairwell into the lobby with the gun in his hand. As defendant stepped toward the building exit just a few feet away, he saw Carson down a nearby hallway. According to defendant, Carson had his hand in his pocket and lifted it upward, as if he was going to fire a gun. In response, defendant "just blacked out" and "started shooting," ultimately firing five shots across the lobby—striking Carson three times and also hitting a bystander—before running out of the building.[1] Once outside, defendant handed the gun back to Foe and fled. He was arrested several days later.

Following the close of proof, the court instructed the jury on the legal principles applicable to defendant's justification defense relating to the shooting itself. Defendant argued that he was also entitled to a jury charge pertaining to temporary and lawful possession of the firearm in connection with the weapons possession charge. However, the trial court declined to provide that charge, observing that defendant had not been facing an imminent threat when he took possession of the gun in the stairwell, particularly because he did not know whether Carson was still nearby. The jury acquitted defendant of the assault and attempted murder charges, but found him guilty of unlawfully possessing the firearm used in the shooting.

Defendant subsequently moved to set aside the verdict based on a juror's claim that she had been threatened in connection with the trial prior to deliberations. Following a

---

[1] Surveillance cameras in the lobby and hallway captured the shooting on video.

hearing, during which the juror's allegations were fully explored, the court found the juror's allegations incredible and denied defendant's motion.

On defendant's appeal, the Appellate Division affirmed (172 AD3d 637 [1st Dept 2019]). That Court concluded there was no reasonable view of the evidence under which defendant was entitled to a temporary and lawful possession charge because, "[r]egardless of whether defendant came into possession of [the] pistol in an excusable manner," he used the gun dangerously "when he fired five shots in the lobby of a building, admittedly shooting two victims (including a bystander not claimed to be posing any threat) while defendant 'just blanked out'" (*id.* at 637-638). The Appellate Division further held that there was "no basis for disturbing the court's finding that [the] juror's testimony about being threatened was incredible" (*id.* at 638). A Judge of this Court granted defendant leave to appeal (34 NY3d 1020 [2019]).

A court must instruct the jury regarding both the "fundamental legal principles applicable to criminal cases in general" and those "material legal principles applicable to the particular case" (CPL 300.10 [1], [2]). "In determining whether to instruct a jury on a claimed defense, the court must view the evidence adduced at trial in the light most favorable to the defendant," and must provide the requested charge if it is supported by a reasonable view of the evidence (*People v Zona*, 14 NY3d 488, 493 [2010]; *see People v Banks*, 76 NY2d 799, 800 [1990]; *People v Butts*, 72 NY2d 746, 750 [1988]). "The rule is that the jury must be instructed on all claimed defenses which are supported by a *reasonable view* of the evidence—not by any view of the evidence, however artificial or irrational" (*Butts*, 72 NY2d at 750). If the evidence sufficiently supports a defense, "[a]

failure by the court to charge the jury constitutes reversible error" (*People v Watts*, 57 NY2d 299, 301 [1982]).  However, "when no reasonable view of the evidence would support a finding of the tendered defense, the court is under no obligation to submit the question to the jury" (*id.*).

This Court has long held that criminal possession of a weapon, as proscribed by the Penal Law, "'should not be construed to mean a possession . . . which might result temporarily and incidentally from the performance of some lawful act'" (*People v LaPella*, 272 NY 81, 83 [1936], quoting *People v Persce*, 204 NY 397, 402 [1912]).  In order to trigger the right to a jury charge concerning the defense of temporary and lawful possession, "there must be proof in the record showing a legal excuse for . . . possession as well as facts tending to establish that, once possession has been obtained, the weapon had not been used in a dangerous manner" (*People v Williams*, 50 NY2d 1043, 1044-1045 [1980]).  In accordance with those principles, the pattern jury charge relating to temporary and lawful possession explains that "[a] person has innocent possession of a weapon when [that person] comes into possession of the weapon in an excusable manner and maintains possession, or intends to maintain possession, of the weapon only long enough to dispose of it safely" (CJI2d[NY] Temporary and Lawful Possession).

In that regard, we have explained that "[a] defendant may not be guilty of unlawful possession if the jury finds that [the defendant] found the weapon shortly before [the defendant's] possession of it was discovered and [the defendant] intended to turn it over to the authorities" (*People v Almodovar*, 62 NY2d 126, 130 [1984]; *see LaPella*, 272 NY at 82-83; *see also Williams*, 50 NY2d at 1045).  We have also indicated that temporary and

lawful possession may result where a defendant "took [the firearm] from an assailant in the course of a fight" (*Almodovar*, 62 NY2d at 130) and the circumstances do not otherwise evince an intent to maintain unlawful possession of the weapon (*see e.g. Banks*, 76 NY2d at 801; *People v Snyder*, 73 NY2d 900, 901-902 [1989]).  In such scenarios, "[t]he innocent nature of the possession negates . . . the criminal act of possession" (*Almodovar*, 62 NY2d at 130).  Ultimately, whether the weapon is found fortuitously or obtained by disarming an attacker, "the underlying purpose of the charge is to foster a civic duty on the part of citizens to surrender dangerous weapons to the police" (*Williams*, 50 NY2d at 1045).

Here, defendant argues that he was entitled to the temporary and lawful possession charge because he took possession of the weapon with the intent to use it only in self-defense and because his eventual firing of the gun was justified.  We disagree.

In *People v Almodovar*, we explained that the defense of justification—which may render the *use* of a firearm lawful—is not a defense to the unlawful *possession* of the weapon (62 NY2d at 130).  In that case, the defendant gained possession of his assailant's gun and shot the assailant in claimed self-defense.  The defendant argued that the jury should have been instructed that "lawful possession includes possession for the purpose of self-defense" (*id.* at 129).  We rejected the defendant's contention, explaining that "[t]he essence" of criminal possession "is the act of possessing a weapon unlawfully"; therefore, "[o]nce the unlawful possession of the weapon is established, the possessory crime is complete and any unlawful use of the weapon is punishable as a separate crime" (*id.* at 130).  Although we recognized that a defendant's possession of a weapon may be excused in circumstances where, for example, that possession results from disarming an attacker or

accidental discovery, we clarified that "a person either possesses a weapon lawfully or . . . does not and [a defendant] may not avoid the criminal charge by claiming that [the defendant] possessed the weapon for . . . protection" because, while "[j]ustification may excuse otherwise unlawful use of the weapon[,] . . . it is difficult to imagine circumstances where it could excuse unlawful possession of it" (*id.*).

Viewing the evidence in the light most favorable to defendant, his initial possession of the firearm cannot be countenanced. Undisputedly, defendant's possession did not "result temporarily and incidentally from the performance of some lawful act, [such] as disarming a wrongful possessor" or unexpected discovery (*Persce*, 204 NY at 402). Rather, under the circumstances presented here, defendant's contention that his possession should be legally excused on the grounds of self-defense amounts to a claim that he was entitled to possess the weapon for his protection. Even crediting defendant's testimony that he had been confronted by Carson at the building's exit earlier and that Carson had displayed a firearm at that time, defendant testified that he then safely retreated to Foe's apartment. There was no evidence suggesting that Carson chased after defendant when he re-entered the building, or that Carson had any awareness of defendant's location in the building. Further, defendant admitted that he accepted possession of the firearm from Foe in the stairwell, at a time when he was unaware of Carson's whereabouts and was not facing any imminent threat to his safety. Defendant then chose to retain possession of the firearm and to enter the lobby with the weapon in his hand. Under these circumstances, the only reasonable conclusion to be drawn from the evidence is that defendant armed himself in anticipation of a potential confrontation; however, the law is clear that defendant "may not

avoid the criminal [possession] charge by claiming that he possessed the weapon for his protection" (*Almodovar*, 62 NY2d at 130).[2]

On this record, defendant's unlawful possession of the firearm was established—and the possessory crime complete—when defendant accepted possession of the firearm in the stairwell (*see id.*). The trial court's decision to instruct the jury on justification with respect to defendant's *use* of the gun does not alter that conclusion. Inasmuch as there was no reasonable view of the evidence upon which a jury could find that defendant's initial possession was temporary and lawful, defendant was not entitled to a jury charge on that defense. In light of this conclusion, we have no occasion to pass upon whether defendant subsequently used the firearm in a dangerous manner so as to otherwise deprive him of any entitlement to the charge.

Defendant's challenge to the denial of his motion to set aside the verdict is also unavailing. "[T]rial courts are vested with discretion in deciding CPL 330.30 (2) motions, and this Court will uphold a trial court's undisturbed findings of fact if they are supported

---

[2] Judge Wilson's concurrence posits that the defense of temporary and lawful possession would apply to excuse possession when that possession is occasioned "by an imminent need for self-defense" (concurring op at 13). To be sure, the disarming of an attacker may give rise to temporary and lawful possession inasmuch as the law recognizes that a person is entitled to attempt to deprive an assailant of a weapon being used against that person, and the resulting possession of the weapon is assuredly "incidental[]" to the lawful disarming (*People v Persce*, 204 NY 397, 402 [1912]). However, as the concurrence acknowledges, we have never held that a person may have temporary and lawful possession of a weapon obtained from a source *other* than an attacker so long as possession is obtained for the purpose of self-defense at a time when the possessor is facing imminent danger. In any event, as our concurring colleague concedes, we need not opine on whether a temporary and lawful possession charge would be warranted in such a scenario because there is no reasonable view that defendant was facing imminent danger when he took possession of the gun.

by evidence in the record" (*People v Rodriguez*, 100 NY2d 30, 35 [2003] [internal citation omitted]; *see People v Ceresoli*, 88 NY2d 925, 926 [1996]).  Here, the hearing court had the opportunity to evaluate the juror's demeanor and credibility, and the court thoroughly explained its bases for discrediting the juror's allegations—including the location at which the threat was purportedly made, the nature of the threat, the manner in which the allegations were reported, as well as the juror's refusal to cooperate with authorities attempting to investigate the alleged threat.  Insofar as the court's credibility determination finds support in the record, this issue is beyond the scope of our review.

Accordingly, the order of the Appellate Division should be affirmed.

RIVERA, J. (concurring):

I concur in the result to affirm the Appellate Division, but not on the grounds set forth by the majority. Defendant Lance Williams is correct that there was evidence supporting the view that he was in imminent danger when he obtained possession of the

- 1 -

gun. With gun in hand, he fired in self-defense, but in a manner reckless under the circumstances. So, while he was entitled to a charge on justification for the use of the gun, he was not entitled to a charge on temporary lawful possession of the weapon.

The decision to grant or deny a requested jury charge depends on the unique facts of every case and will ultimately be determined by the evidence adduced at trial, as seen in the light most favorable to the defendant (*People v Zona*, 14 NY3d 488, 493 [2010]). Applying this standard, the majority and Judge Wilson in his concurring opinion devote most of their respective analyses to determining whether defendant's possession of the weapon, obtained only moments before his confrontation with Carson, warrants a temporary and lawful possession instruction. In my view, the evidence reasonably supported the view that—in light of defendant's violent history with Carson and his family, his belief that he was being set up, his unfamiliarity with the building, Foe's acknowledgement that there was a man wearing a blue jacket in the lobby, and the fact that Foe thrust the gun upon defendant mere moments before opening the door to the lobby— defendant was in imminent danger and that his possession of the weapon was therefore lawful.

However, we have held that a defendant is entitled to a temporary and lawful possession instruction only if "there . . . [is] proof in the record showing . . . that, once possession has been obtained, the weapon had not been used in a dangerous manner" (*People v Banks*, 76 NY2d 799, 801 [1990] [internal citation omitted]). Here, the record demonstrates that defendant used the weapon in a dangerous manner and, therefore, had no entitlement to the requested instruction. As the Appellate Division explained, defendant

"fired five shots in the lobby of a building, admittedly shooting two victims (including a bystander not claimed to be posing any threat) while defendant 'just blanked out'" (*People v Williams*, 172 AD3d 637, 637 [1st Dept 2019], *lv granted* 34 NY3d 1020 [2019]). Indeed, defendant's testimony repeatedly emphasized that he "blanked out," that he "was just shooting" and "wasn't paying attention," and that he "didn't see anything until after everything was over." While Judge Wilson is correct that mere use of a deadly weapon cannot deprive a defendant of the charge (Wilson, J., concurring op at 6-7), here, the only inference to be drawn from defendant's testimony is that he fired indiscriminately into the cramped lobby, in the middle of the day, seemingly unconcerned with the presence of other individuals in close proximity.

As the Appellate Division held, "[r]egardless of whether defendant came into possession of a pistol in an excusable manner, 'he used it in a dangerous manner'" (*id.*, citing *People v Williams*, 50 NY2d 1043, 1045 [1980] [alteration omitted]). That dangerous use precluded the temporary and lawful possession instruction as a matter of law (*see Banks*, 76 NY2d at 801; *Williams*, 50 NY2d at 1045 [holding that defendant's use of a weapon "in a manner which may be charitably characterized as reckless" deprived him of the charge]).

WILSON, J. (concurring):

This appeal requires us to decide whether a jury could find that Lance Williams had

a legal excuse to arm himself with a gun as he stood on one side of a door, moments before

he walked through the door to find an armed rival on the other side.[1]  I agree with the majority that the line between criminal and lawful gun possession here, strange as it may seem, lay at that doorway—but for reasons somewhat different than those given by the majority.  Drawing the right line requires us to analyze the two strands of case law that govern temporary and lawful possession of a weapon—one relating to found weapons and the other relating to weapons acquired immediately before an anticipated use in self-defense—and to recognize the competing public policies underlying the defense of temporary and lawful possession.

New York's Penal Law has long embodied a strong public policy against possession of illegal weapons.  In 1912, construing the forerunner to New York's current prohibition on weapons possession, our Court explained the legislature's purpose in making possession of certain dangerous weapons "of itself a crime without evidence of intent to use" (*People v Persce*, 204 NY 397, 401 [1912], citing former Penal Law § 410, as amended by L 1905, ch 92, and former Penal Law § 1897, as added by L 1909, ch 88).  The legislature determined that "one of the proper and efficient methods by which to prevent the commission of crime to be apprehended through the instrumentality of these weapons was to make their possession of itself criminal without delaying until opportunity had bred [to commit] some particular evil design" (*id.* at 402-403).  Accordingly, our Court has consistently recognized that "the act of possessing a weapon unlawfully" is "[t]he essence

---

[1] As with several of the facts, it is not clear that his rival, Leon Carson, was armed. However, in determining whether Mr. Williams was entitled to a jury instruction, we must view the trial evidence "in the light most favorable to the defendant" (majority op at 4, quoting *People v Zona*, 14 NY3d 488, 493 [2010]).

of the illegal conduct defined in sections 265.01–265.05 of the Penal Law," New York's current weapons possession statutes (*People v Almodovar*, 62 NY2d 126, 130 [1984], citing Penal Law §§ 265.01-265.05, as amended by L 1974, ch 1041).

The defense of temporary and lawful possession is a creature of the common law, made and adapted by courts. Since the inception of New York's prohibitions on possessing illegal firearms, we have recognized a defense of "temporary and lawful possession," available to persons who "possess an unlicensed or proscribed weapon" but are "not . . . guilty of a crime because of the innocent nature of the possession" (*Almodovar*, 62 NY2d at 130 [internal quotation marks omitted]). Interpreting New York's first prohibition on mere possession of certain weapons, our Court recognized that the ban on possession "should not be construed to mean a possession for instance . . . which might result temporarily and incidentally from performance of some lawful act, as disarming a wrongful possessor" (*Persce*, 205 NY at 402). Accordingly, courts have consistently determined that the common-law defense of temporary and lawful possession may be available to defendants who take possession of a weapon incident to defending themselves against an attacker, reflecting the view that such conduct "as a matter of policy . . . is not deemed criminal" (*Almodovar*, 62 NY2d at 130; *see also* cases cited *infra* p. 10-11).

In addition, over the years the legislature has created certain statutory defenses exempting persons from liability for otherwise illegal possession of a weapon, including persons "voluntarily surrendering such weapon" to law enforcement officials (Penal Law § 265.20 [f]; *see also* former Penal Law § 1897 subd. 6-a, as added by L 1940 ch 259 [forerunner to the current statutory exemption precluding arrest of any person who

"voluntarily delivers to a peace officer any pistol, revolver or other firearm or any other dangerous or deadly instrument or weapon mentioned in (Penal Law § 1897), under circumstances not suspicious, peculiar or involving the commission of any crime"]). Although the statutory exemption post-dates the common-law defense of temporary and lawful possession and constitutes a different legal defense to liability, the enactment of a statutory defense pertaining to found weapons does not impair the pre-existing common-law defense, particularly as that defense pertains to weapons obtained during a life-threatening altercation and needed for self-defense.

Even before the legislature created a statutory exemption for persons who found weapons and sought to turn them over to law enforcement, our case law recognized a common-law defense to that effect (*see People v La Pella*, 272 NY 81, 83 [1936] [holding that it was error not to instruct the jury "that if this defendant found this pistol as claimed by him, and if he thereafter took this gun for the purpose of delivering it to an officer or to a police station, that he was performing a civic duty, and that such possession was not the possession intended by Section 1897"]). After the enactment of the statutory exemption, the common-law doctrine of temporary and lawful possession has remained a viable defense in cases of found weapons (*see People v Williams*, 50 NY2d 1043, 1045 [1980] [recognizing that the common-law defense is available to defendants where it serves the public policy of "foster(ing) a civic duty on the part of citizens to surrender dangerous weapons to the police"]). However, the purpose underlying the line of cases permitting defendants who find illegal weapons to assert the common-law defense—namely, advancing a "civic duty" to surrender such weapons (*La Pella*, 272 NY at 83; *Williams*, 50

NY2d at 1045)—was not the basis for courts' initial creation of the common-law defense as a shield to defendants who acquired weapons for immediate self-defense (*see Persce*, 205 NY at 402). New York's pattern instructions on temporary and lawful possession also capture the public policy against retaining illegal weapons, explaining that "[a] person has innocent possession of a weapon when [that person] comes into possession of the weapon in an excusable manner and maintains possession, or intends to maintain possession, of the weapon only long enough to dispose of it safely" (CJI2d[NY] Temporary and Lawful Possession [noting that the jury may consider, among a non-exhaustive list of non-dispositive factors, "the defendant's opportunity, if any, to turn the weapon over to the police or other appropriate authority"]). But the instruction contains an amalgam of elements—some relating to how the defendant obtained the weapon, some relating to how the defendant disposed of it, among other things—that, as with all jury instructions, the trial court may need to tailor to the facts of a given case (*see id.*; *see also People v Thomas*, 172 AD2d 572, 573 [2d Dept 1991] [holding that "the trial court improperly ruled that it could not tailor its charge to the facts of the case," and instead "used two 'generic' examples (that) referred to a defendant who disarmed an attacker and implied that the defense would be valid only where the defendant had the intent to turn the weapon over to the police"], *lv denied* 78 NY2d 927 [1991]; *People v Harmon*, 7 AD2d 159, 161 [4th Dept 1959] [where the defendant seized a weapon from his assailant, the trial court properly instructed the jury on "the possibility of legal possession," but erred in failing to provide "explanatory instructions to which the defendant was entitled," including on "important

factors such as the time of disarming in relation to the time of seizure, the reason for possession after disarming, and the like"]).

Courts have never endorsed the view that a defendant's failure to surrender the weapon to the police necessarily precludes a jury instruction on the defense of temporary and lawful possession when the defendant was confronted with an armed assailant and obtained a weapon in the course of the altercation, and courts have also made clear that a defendant's use of the weapon, if justified, does not rule out an instruction on temporary and lawful possession (*see Almodovar*, 62 NY2d at 130; *People v Bonilla*, 154 AD3d 160, 164 [1st Dept 2017] ["(T)he firing of shots did not negate a defendant's entitlement to a temporary lawful possession instruction where the shooting was justified and the possession was otherwise lawful"]).

We have held that in some cases the defendant's retention or use of the weapon after acquiring it was so "at odds with any claim of innocent possession" that the instruction was unwarranted—for example, where evidence showed that the defendant found a gun at his friend's apartment, hid it, "remov[ed] it when it suited his own purpose," and injured his friend while handling it in a "reckless" manner (*Williams*, 50 NY2d at 1045). In *Williams*, we stated the general rule that, in order to "trigger the right" to a temporary and lawful possession instruction, the evidence viewed in a light most favorable to the defendant must show "a legal excuse for having the weapon in [the defendant's] possession as well as facts tending to establish that, once possession has been obtained, the weapon had not been used in a dangerous manner" (*id.*). Since *Williams*, we have confirmed that the latter requirement—the rule that the defendant not use the weapon "in a dangerous manner"—

does not preclude the instruction when the defendant obtains and uses the weapon in lawful self-defense (*see Almodovar*, 62 NY2d at 130). Rather, the rule against "dangerous" use of the weapon applies when a defendant uses the gun in a manner that negates any inference of innocent possession (*Williams*, 50 NY2d at 1045).

Essentially, the rule against "dangerous" use of the weapon is a refinement of the common-law defense available to persons who claim they intended to surrender found weapons to the police: the dangerous use of a found weapon negates a claim that the defendant truly planned to deliver it to the police or other appropriate authority. It does not generally apply in situations when a defendant uses a weapon in justified self-defense, a use which is necessarily "dangerous."

Generally speaking, courts have found defendants entitled to a jury instruction on temporary and lawful possession as a defense to criminal possession of a weapon in two sets of circumstances. <u>First</u>, "[a] defendant may not be guilty of unlawful possession if the jury finds that [the defendant] found the weapon shortly before [the defendant's] possession of it was discovered and [the defendant] intended to turn it over to the authorities" (*Almodovar*, 62 NY2d at 130; *see also Harmon*, 7 AD2d at 160 [noting that the defense applies in "situations . . . such as finding a prohibited weapon and endeavoring to take it to the nearest police officer"]). A body of case law addresses situations where the defendant happened to discover an illegal weapon and either sought to turn it over to the police or evidenced no intent to keep or use the weapon unlawfully (*see e.g. La Pella*, 272 NY at 83 [the defendant's possession of a firearm, where he found it in a public toilet room and took it "intending to deliver it to the police," was the kind of lawful act "designed

to meet the social policy of the law"]; *Thomas*, 172 AD2d at 573 [a jury instruction on temporary and lawful possession was warranted, but the court's instruction was "overly restrictive" where it "implied that the defense would be valid only where the defendant had the intent to turn the weapon over to the police," and the defendant's evidence showed that he had taken the gun away from a young friend as a precaution and put it in his pocket when the police approached]; *People v Furey*, 13 AD2d 412, 415, 413 [1st Dept 1961] [the trial court should have instructed the jury on "innocent possession" where the defendant testified that he picked up a "shiny object in the street . . . and found it was a pistol," walked with it for a block, and dropped it when he saw a police car]; *People v Quintana*, 260 AD 13, 15 [1st Dept 1940] [where testimony showed that the defendant train conductor "picked up the blackjack in (a) subway train . . . for the purpose of turning it over to the proper representatives of the railroad company," his possession of the blackjack was lawful]).

Consistent with that line of cases, we have held that a defendant is not entitled to a temporary and lawful possession instruction, even if the defendant's initial acquisition of the weapon was excused, when the defendant unlawfully retained the weapon or used it in a dangerous manner (*see People v Banks*, 76 NY2d 799, 801 [1990] [the trial court properly denied a temporary and lawful possession instruction where the defendant testified that he acquired the gun by disarming another man in a fight, but then concealed and transported the gun and "proposed to 'throw it down a sewer'"]; *People v Snyder*, 73 NY2d 900, 901, 902 [1989] [the instruction was properly denied where the defendants "wrested a loaded

pistol" from the man they were assaulting, hid the clip from the gun, and "made no effort

to report the incident" even when the police arrived on the scene]).[2]

Second, consistent with our earliest case law on the defense of temporary and lawful

possession, courts recognize that a defendant's act of possessing a weapon may be excused

when that act is occasioned by a need for self-defense, for example, when the defendant

---

[2] Similarly, ample Appellate Division case law provides that a defendant's conduct after obtaining a weapon—for example, concealing or disposing of it unlawfully, or keeping it in anticipation of a future conflict—may negate innocent possession or constitute a separate act of possession that is neither temporary nor lawful (*see e.g. People v Tomczyk*, 176 AD3d 456, 457 [1st Dept 2019] [instruction properly denied where, "although the jury apparently credited defendant's testimony that he took possession of the subject handgun in a struggle with an assailant, whom he shot in self-defense," the defendant also testified that he then took the gun home after the shooting, concealed it in a closet, and did not report it to the police when they arrived at his home], *lv denied* 34 NY3d 1082 [2019]; *People v Frazier*, 152 AD3d 791, 792 [2d Dept 2017] [instruction properly denied where, "(a)lthough the defendant claimed that he picked up somebody else's gun after he had just been shot in the arm, he ran away from the police . . . and never informed the officers about the gun . . . despite ample opportunity"], *lv dismissed* 31 NY3d 1013 [2018]; *People v Reel*, 150 AD3d 1028, 1029 [2d Dept 2017] [instruction properly denied where, "although the gun was initially 'thrust' upon the defendant's person," the defendant retained the gun "in anticipation of . . . discharging a debt owed to his drug dealer"], *lv denied* 30 NY3d 982 [2017]; *People v Holmes*, 129 AD3d 1692, 1695 [4th Dept 2015] [instruction properly denied where the "defendant's decision to take the firearm with him after the initial altercation (with the decedent), despite having called 911, and keeping the firearm with him during his escalating confrontation with (the decedent)" was at odds with innocent possession], *lv denied* 26 NY2d 968 [2015]; *People v Aracil*, 45 AD3d 401, 401 [1st Dept 2007] [instruction properly denied where defendant testified that she picked up the firearm when it "fell from the waistband of a man with whom she was struggling," but then brought it into an apartment building "for the purpose of intervening in a fight"], *lv denied* 9 NY3d 1030 [2008]; *People v DiMaria*, 22 AD3d 229, 230 [1st Dept 2005] [instruction properly denied when the defendant "carr(ied) an illegal weapon in anticipation of a future need to use it in self-defense"], *lv denied* 6 NY3d 775 [2006]; *People v Karim*, 176 AD2d 670, 671 [1st Dept 1991] [instruction properly denied where the evidence showed that the "defendant, armed with a loaded pistol, engaged in an argument with the complainant that elevated into a wrestling match," and the defendant admitted that he fired the gun "to frighten the complainant"], *lv denied* 79 NY2d 859 [1992]).

"took [the weapon] from an assailant in the course of a fight" (*Almodovar*, 62 NY2d at 130 [holding that a temporary and lawful possession instruction was proper where the defendant claimed that he wrested a pistol from his attacker and fired it in self-defense], citing *People v Harmon*, 7 AD2d at 159 [holding that it was error not to instruct the jury on temporary and lawful possession where the defendant testified that he took the illegal weapon "from another person who had used it against him in a fight" and that "he intended to turn it over to his father"]; *see also People v Sackey-El*, 149 AD3d 1104, 1106 [2d Dept 2017] [same error, where the defendant "testified that he only possessed the knife, if at all, when he attempted to disarm the complainant during the fight," and "although the defendant's use of the knife thereafter resulted in the complainant being stabbed," if the jury believed it was justified, such use did not preclude innocent possession]; *Bonilla*, 154 AD3d at 162, 164 [same error, where evidence showed that, after a struggle with the decedent over a gun, the defendant retrieved the gun, walked away, and during "(a)nother struggle" with the decedent and several other men soon thereafter, the defendant shot the decedent and one of the men before running away and dropping the gun on the street], *lv denied* 30 NY3d 1017 [2017]; *People v Legett*, 140 AD2d 1, 4 [1st Dept 1988] [same error, where the defendant testified that he grabbed a plastic bag containing a gun away from his assailant and surrendered the gun to the police when they arrived on the scene]; *People v Singleteary*, 54 AD2d 1088, 1088 [4th Dept 1976] [same error, where the jury could find that "defendant's possession of the gun was momentary and only occurred when he wrested the weapon from the deceased"]; *People v Pendergraft*, 50 AD2d 531, 532 [1st Dept 1975] [same error, where a police officer testified that he saw the defendant throw a gun to the

ground while struggling with another man who was wielding a knife]; *People v Messado*, 49 AD2d 560, 560 [1st Dept 1975] [same error, where the decedent was shot amid "a struggle for control of the weapon" and "(t)here was conflicting testimony" about whether the defendant or the decedent possessed the gun]).

As the majority notes, our Court has not decided a case in which a defendant acquired a weapon during a life-threatening altercation from someone other than the defendant's assailant, but the Appellate Division has held that temporary and lawful possession instructions were warranted in cases where the defendant, while fending off an assailant, obtained the weapon from another source (*see e.g. People v Fletcher*, 166 AD3d 796, 799 [2d Dept 2018] [it was error not to instruct the jury on temporary and lawful possession where the defendant testified that he picked up a knife from the floor and stabbed the complainant while under attack from the complainant and another person]; *People v Curinaj*, 65 AD2d 705, 705 [1st Dept 1978] [same error, where the defendant testified that he was attacked by the complainant, called an acquaintance for assistance, accepted a gun that the acquaintance had on his person, and the complainant was shot in the ensuing struggle for the gun]). The availability of the temporary and lawful possession defense as a matter of law has—sensibly—not turned on the source of the weapon, but instead depends on whether the evidence shows that the defendant had a legal excuse to possess the weapon at the moment of acquiring it, which proposition the majority does not dispute.[3]

---

[3] We have never held that the defense of temporary and lawful possession is limited to situations in which a defendant "disarm[s] a wrongful possessor," the example we gave in

Mr. Williams's appeal implicates that latter body of case law—the doctrine that guides courts when a defendant's right to lawful self-defense and the State's policy against possession of illegal weapons collide. The common-law defense of temporary and lawful possession acts to reconcile those two principles by excusing a defendant's possession of a weapon when it "result[s] . . . incidentally" from justified self-defense (*Persce*, 205 NY at 402), but limiting the defense to situations when the defendant faces an imminent threat (*cf. People v DiMaria*, 22 AD3d 229, 230 [1st Dept 2005] [temporary and lawful possession "does not apply to carrying an illegal weapon in anticipation of a future need to use it in self-defense"]). The question here—and it is a very close one—is whether a jury could find that Mr. Williams's gun possession fell within the ambit of temporary and lawful possession, thereby entitling him to an instruction on that defense.

Important here, New York does not by judicial rule or statute permit justification or necessity as defenses to criminal possession of a weapon, setting it apart from many states that do (*see generally State v Crawford*, 308 Md 683, 696 [1987] [holding that "necessity may be a defense to the charge of unlawful possession of a handgun" and collecting cases from other states and federal circuits that allow self-defense or necessity as a defense to unlawful possession of a weapon]). New York's limitation on defenses to weapons possession reflects its exceptionally strong public policy against possessing unlicensed

---

*Persce* of the kind of "lawful act" that would not constitute criminal possession (204 NY at 402). Indeed, it would make little sense to limit the defense to situations where a defendant wrested the weapon from an attacker, as it would bar a temporary and lawful possession defense in situations where, for example, an assailant shoots an armed police officer and a civilian bystander picks up the officer's gun and shoots the assailant to defend the officer or others.

firearms.  Mr. Williams's appeal requires us to construe the scope of the temporary and lawful possession defense as a matter of law, against the background of two competing public policies.  A line must be drawn between, on the one hand, temporary possession of a weapon that is legally excused by an imminent need for self-defense, and, on the other hand, the unlawful act of arming oneself in anticipation—even correct anticipation—of a future need for protection.

Though I agree with the majority's conclusion that Mr. Williams's possession of the gun fell, just barely, on the wrong side of that line, my conclusion rests on a different analysis.  The majority misapprehends the nature of Mr. Williams's argument and our precedents when, in order to explain why an instruction on temporary and lawful possession was improper in Mr. Williams's case, it relies on our Court's explanation for rejecting an instruction on justification as a defense to criminal possession in *Almodovar*. As *Almodovar* and its progeny make clear, use of a weapon in justified self-defense does not preclude an instruction on temporary and lawful possession, but neither justification nor necessity provides an automatic defense to criminal possession of a weapon—those defenses apply, if at all, to the separate crime of the use of the weapon (*see* 62 NY2d at 130 ["Justification may excuse otherwise unlawful use of the weapon but it is difficult to imagine circumstances where it could excuse unlawful possession of it"]; *see also People v Pons*, 68 NY2d 264, 267 [1986] [holding that "because possession of a weapon does not involve the use of physical force (*see*, *People v Almodovar*, *supra*), there are no circumstances when justification (Penal Law § 35.15) can be a defense to the crime of criminal possession of a weapon"]; *People v Abdul-Hakeem*, 172 AD2d 177, 178 [1st Dept

1991] [rejecting the defendant's "contention that his possession of the weapons was justified by the doctrine of necessity as codified in Penal Law § 35.05," because "the extent to which possession of an unlicensed or proscribed weapon is deemed innocent in this State is limited to circumstances in which the possession is 'temporary and lawful'"], *lv denied* 78 NY2d 960, 964 [1991]).

However, the majority's reliance on *Almodovar* is inapt because the entitlement to an instruction on justification is not disputed in Mr. Williams's case.  Here, with the People's consent, the trial court instructed the jury on justification as a defense to the charges of attempted murder and assault—that is, Mr. Williams's use of Foe's gun.  Unlike the defendant in *Almodovar*, who properly received a temporary and lawful possession instruction but also sought a justification defense to criminal possession (*see* 62 NY2d at 129 [the defendant requested an instruction that "lawful possession includes possession for the purpose of self-defense"]), Mr. Williams did not seek a jury instruction on justification as a defense to criminal possession, and his justification defense to the shooting was resolved in his favor by the jury and is not at issue here.  The problem with the majority's analysis is that it offers reasons for rejecting a temporary and lawful possession charge that would also preclude a justification defense to the shooting, essentially suggesting that Mr. Williams could have safely retreated from danger.

Instead, the reason why a temporary and lawful possession charge was not required is that, viewing the evidence in the light most favorable to Mr. Williams, his initial possession of the gun was slightly premature, compared to circumstances in which courts have found defendants entitled to a temporary and lawful possession charge.  As the

majority notes, Mr. Williams's testimony, if credited, showed that Mr. Williams and Mr. Carson had a history of violent encounters, and when Mr. Carson confronted Mr. Williams outside Foe's building and displayed a gun, Mr. Williams ran inside to Foe's apartment, fearing that Mr. Carson was going to shoot him. When Foe would not allow Mr. Williams to stay in his apartment or call 911, Mr. Williams agreed to go downstairs to his car with Foe, who had armed himself with a gun. Approximately seven minutes after Mr. Williams first encountered Mr. Carson and an unknown man in a blue jacket who was with him, Foe reached the door of the lobby and told Mr. Williams he saw a man in a blue jacket in the lobby. By Mr. Williams's account, it was at that moment that he accepted the gun from Foe, before he knew that Mr. Carson was in the lobby or even anywhere on the premises, or that the man in the blue jacket was Mr. Carson's associate, or that Foe had seen anyone with a weapon. If, for example, Mr. Williams had accepted or grabbed the gun from Foe after walking into the lobby and seeing Mr. Carson reach into the pocket where Mr. Williams had seen a gun before, then, as the People here agree, Mr. Williams should have received a temporary and lawful possession instruction because he could claim "a legal excuse for having the weapon" (*Williams*, 50 NY2d at 1045; *see also Almodovar*, 62 NY2d at 129 [the defendant properly received a temporary and lawful possession charge where he claimed that the complainant "attacked him first with (a) gun," so the defendant "took control of the gun . . . and used it to protect himself"]). Similarly, our case law suggests, and the People agree, that a temporary lawful possession instruction would be warranted if Mr. Williams had taken the gun after Foe looked into the lobby, saw Mr. Carson holding a gun, and reported it to Mr. Williams. By comparison, Mr. Williams would clearly have no

claim to a temporary lawful possession charge if, for instance, he had gone to Foe's apartment to arm himself in anticipation of a confrontation, or if hours instead of minutes had elapsed since he last saw Mr. Carson in the area.

The actual case is close because Mr. Williams's possession of the gun in reasonable anticipation of a possible threat—a correct anticipation, as it turned out—came so near to possession occasioned by an immediate threat, which a jury could find legally excused. Although, as a general matter, close cases involving disputed facts are the province of the trier of fact, it is our job to draw the line of legal entitlement to jury instructions somewhere. Though a close question, I concur in the result here, because the line we draw to balance the right to self-defense against the strong public policy prohibiting possession of illegal firearms, which countenances no excuse for arming one's self in advance of a future confrontation, requires a bit more evidence of imminence than Mr. Williams had when he stood behind the closed door.

Order affirmed. Opinion by Judge Stein. Judges Fahey, Garcia and Feinman concur. Judge Rivera concurs in result in an opinion. Judge Wilson concurs in result in a separate concurring opinion. Chief Judge DiFiore took no part.

Decided December 17, 2020