People v Ruiz (2021 NY Slip Op 04827)





People v Ruiz


2021 NY Slip Op 04827


Decided on August 26, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 26, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, NEMOYER, CURRAN, AND DEJOSEPH, JJ.


436 KA 18-01832

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
REBECCA RUIZ, DEFENDANT-APPELLANT. 






THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (JAMES M. SPECYAL OF COUNSEL), FOR DEFENDANT-APPELLANT. 
PATRICK E. SWANSON, DISTRICT ATTORNEY, MAYVILLE (MARILYN FIORE-LEHMAN OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Chautauqua County Court (David W. Foley, J.), rendered June 19, 2018. The judgment convicted defendant upon a jury verdict of criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law and a new trial is granted on the second count of the indictment.
Memorandum: On appeal from a judgment convicting her upon a jury trial of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), defendant contends that County Court erred in denying her request to instruct the jury on the defense of temporary and lawful possession of a firearm. We agree, and we therefore reverse.
To establish entitlement to a charge for temporary and lawful possession of a firearm, " 'there must be proof in the record showing a legal excuse for having the [firearm] in [one's] possession as well as facts tending to establish that, once possession [was] obtained, the [firearm was not] used in a dangerous manner' " (People v Banks, 76 NY2d 799, 801 [1990], quoting People v Williams, 50 NY2d 1043, 1045 [1980]; see People v Williams, 36 NY3d 156, 161 [2020]; People v Graham, 148 AD3d 1517, 1518 [4th Dept 2017]). A court must grant a defendant's request for a jury charge when, viewing the evidence in the light most favorable to the defendant, the charge is supported by a reasonable view of the evidence (see Williams, 36 NY3d at 160; cf. People v Sinkler, 112 AD3d 1359, 1360 [4th Dept 2013], lv denied 22 NY3d 1159 [2014]).
Here, viewed in the light most favorable to defendant, we conclude that the evidence adduced at trial was sufficient to justify the requested charge. Defendant testified that she had inadvertently discovered the firearm while attempting to protect herself in the face of an imminent threat, i.e., a person forcibly trying to enter her home. Specifically, she thought that her estranged husband, who had previously attacked her in her home, was the person attempting to forcibly enter the home. She discovered the firearm while trying to find in her kitchen an object to defend herself, and she did not know beforehand that the firearm was there. When the person at the door continued trying to enter the home, defendant shot through the door to scare him away. Thereafter, defendant saw that she had shot the victim—her boyfriend. She then dropped the firearm, and started to provide first aid. The firearm was not recovered after the shooting, and defendant did not know what happened to it.
Even assuming, arguendo, that the court expressly decided that defendant's initial possession of the firearm was not legally excusable, thereby not precluding our review of that contention by People v Concepcion (17 NY3d 192, 197-198 [2011]; see People v LaFontaine, 92 NY2d 470, 474 [1998], rearg denied 93 NY2d 849 [1999]), we conclude that there is a reasonable view of the evidence, when viewed in the light most favorable to defendant, that she [*2]came into possession of the firearm in a legally excusable manner that was not
" 'utterly at odds with [any] claim of innocent possession' " (People v Robinson, 63 AD3d 1634, 1635 [4th Dept 2009], lv denied 13 NY3d 799 [2009]; see People v LaPella, 272 NY 81, 82-83 [1936]; People v Mack, 177 AD3d 1155, 1156 [3d Dept 2019]; People v Holes, 118 AD3d 1466, 1468 [4th Dept 2014]; cf. People v Myers, 265 AD2d 598, 600 [3d Dept 1999]).
We also conclude that, viewing the evidence in the light most favorable to defendant, there is a reasonable view thereof that defendant's use of the firearm did not require a finding that she had used it in a dangerous manner, such that she was per se ineligible for a temporary and lawful possession charge (see e.g. People v Almodovar, 62 NY2d 126, 129-130 [1984]; People v Bonilla, 154 AD3d 160, 164-165 [1st Dept 2017], lv denied 30 NY3d 1017 [2017]; People v Sackey-El, 149 AD3d 1104, 1106 [2d Dept 2017]; People v Singleteary, 54 AD2d 1088, 1088 [4th Dept 1976]). We note that the court instructed the jury on a justification defense for the homicide charges of which defendant was ultimately acquitted, and therefore "the fact that defendant shot the decedent did not constitute a 'dangerous use' barring the court from giving a temporary lawful possession charge" (Bonilla, 154 AD3d at 164; see People v Fletcher, 166 AD3d 796, 798-799 [2d Dept 2018]; Sackey-El, 149 AD3d at 1106).
To the extent that the People argue as alternative grounds for affirmance that defendant was not entitled to the requested jury instruction because she constructively possessed the firearm that was in her home before the incident and because parts of her testimony were incredible as a matter of law, we conclude that those contentions are unpreserved inasmuch as they are raised for the first time on appeal (see CPL 470.05 [2]; People v Pescara, 162 AD3d 1772, 1774 [4th Dept 2018]). Regardless, because the court did not deny defendant's request for the temporary and lawful possession instruction on those grounds, we are precluded from affirming the judgment on those grounds (see Concepcion, 17 NY3d at 192; LaFontaine, 92 NY2d at 474).
To the extent that the relevant pattern jury instruction for temporary and lawful possession of a weapon does not cover all possible fact patterns in cases in which a valid defense is asserted (see generally CJI2d[NY] Possession—Temporary and Lawful Possession n 4), we note that "[t]he trial court[] should, where necessary, expand on or alter the pattern charge[] set forth in the CJI section so as to make the charge on this defense appropriate to the facts of the case" (People v Whitehead, 123 AD2d 895, 896-897 [2d Dept 1986]).
In light of our decision, defendant's remaining contention is academic.
All concur except Nemoyer, J., who dissents and votes to affirm in the following memorandum: Defendant stands convicted of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) for illegally possessing the loaded firearm with which she fatally shot her boyfriend. Notwithstanding her decision to seek out a weapon instead of calling 911 in the minutes before the shooting, defendant claims to have killed her boyfriend in a reasonable—albeit mistaken—act of self-defense. The majority now grants defendant a new trial on the possessory count because the jury was not instructed on the common-law defense of temporary lawful possession; according to the majority, defendant was entitled to such an instruction because there was a reasonable view of the evidence in which her use of the subject weapon was justified within the meaning of Penal Law article 35. In my view, the majority's analysis conflates temporary lawful possession with justification and ignores a body of binding authority from the Court of Appeals. I therefore respectfully dissent and, seeing no reason to reduce defendant's sentence, I vote to affirm.
As I read it, the Court of Appeals' recent decision in People v Williams (36 NY3d 156 [2020]) is entirely dispositive of defendant's temporary lawful possession claim. In Williams, the majority squarely rejected the defendant's argument "that he was entitled to the temporary and lawful possession charge because he took possession of the weapon with the intent to use it only in self-defense and because his eventual firing of the gun was justified" (id. at 161). As the Williams majority explained, it is well established that "the defense of justification—which may render the use of a firearm lawful—is not a defense to the unlawful possession of the weapon" (id., citing People v Almodovar, 62 NY2d 126, 130 [1984]). Thus, because Mr. Williams "armed himself in anticipation of a potential confrontation . . . , the law is clear that [he] 'may not avoid the criminal [possession] charge by claiming that he possessed the weapon for his protection' " (id. at 162-163, quoting Almodovar, 62 NY2d at 130).
Defendant's argument in this case is, to my mind, indistinguishable from the argument rejected by the Court of Appeals in Williams. By her own account, this defendant illegally armed herself in anticipation of a potential confrontation with another person (i.e., the boyfriend that she would later claim to have mistaken for her estranged husband), but she insists that her illegal conduct should be excused because she took possession of the loaded firearm only as an instrument of self-defense. In short, defendant's "contention that h[er] possession should be legally excused on the grounds of self-defense amounts to a claim that [s]he was entitled to possess the weapon for h[er] protection" (id. at 162). And that claim—as the Court of Appeals reiterated just last year in Williams—has no basis in New York law (see id. at 161-163). We need go no further to resolve this appeal.
In any event, it is well established that the common-law defense of temporary lawful possession is categorically unavailable to any defendant who " 'used [the subject weapon] in a dangerous manner' " (id. at 161, quoting People v Williams, 50 NY2d 1043, 1044-1045 [1980] [emphasis added]). Here, it is undisputed that defendant used the subject gun to shoot through a closed door and thereby killed the person standing on the other side. I cannot fathom a more quintessentially "dangerous" use of a weapon. If this defendant did not "use" this weapon in a "dangerous manner," then that term has no meaning. Thus, as the People correctly argued below, defendant's manifestly "dangerous" use of the subject weapon definitively foreclosed any temporary lawful possession instruction in this case (see e.g. People v Williams, 172 AD3d 637, 637 [1st Dept 2019], affd 36 NY3d 156 [2020]; People v Aracil, 45 AD3d 401, 401-402 [1st Dept 2007], lv denied 9 NY3d 1030 [2008]).
Unlike the majority, I would not follow the First Department's contrary (and pre-Williams) decision in People v Bonilla (154 AD3d 160, 164-165 [1st Dept 2017], lv denied 30 NY3d 1017 [2017]). Under Bonilla's rule, any justifiable use of a weapon—even one that results in death or grievous bodily harm to another person—is deemed a non-dangerous use of that weapon for purposes of the temporary lawful possession defense (see id.). And that judicial legerdemain makes no sense either doctrinally or logically, for it improperly conflates a "dangerous" use of a weapon with a "justified" use of a weapon.
Doctrinally, Bonilla's redefinition of "dangerous" to mean "dangerous and unjustified" cannot be reconciled with the Court of Appeals' governing framework for temporary lawful possession, which bars the defense whenever the defendant puts an illegally-possessed weapon to dangerous use—irrespective of whether that dangerous use was legally justified or not (see Williams, 36 NY3d at 161; Williams, 50 NY2d at 1044-1045). To my knowledge, a majority of the Court of Appeals has never suggested, much less held, that the temporary lawful possession defense could avail a defendant that used an illegally-possessed weapon to maim or kill another person so long as that maiming or killing was justified. Quite the opposite; the Court of Appeals has consistently held that justification is not a cognizable defense to possessory offenses (see Williams, 36 NY3d at 161-163; Almodovar, 62 NY2d at 130), and Bonilla's novel premise—i.e., that justification negates dangerousness for purposes of the temporary lawful possession defense—is simply a backdoor mechanism for introducing justification as a cognizable defense to possessory offenses in derogation of the Court of Appeals' longstanding edict to the contrary.
Bonilla's rule fares no better logically, for it ignores the fact that a weapon can be used in a manner that is simultaneously dangerous and justified. This case perfectly exemplifies that duality. By shooting a person through a door, defendant obviously used the subject weapon in a "dangerous manner." After all, her use of that weapon caused the death of another person, and that is the very epitome of using a weapon dangerously. The fact that such use might have been "justified" within the meaning of Penal Law article 35 does not in any way negate the inherent and self-evident dangerousness of defendant's conduct. Put simply, a finding of justification means only that the defendant's use of a weapon was not criminal, not that such use was not dangerous. And for purposes of the defense of temporary lawful possession, what matters is the dangerousness of the weapon's use, not the justification for the weapon's use. In holding otherwise, Bonilla should be rejected.
In closing, I emphasize that this defendant has already received every benefit and right to which she was entitled under the circumstances, namely, a justification instruction on the homicide counts stemming from her use of the loaded firearm that she illegally possessed (see Almodovar, 62 NY2d at 130-131). The jury even acquitted her of those homicide counts, [*3]presumably in reliance on the justification instruction. But defendant's undeniably dangerous use of her illegally-possessed weapon—even if justified—necessarily precluded any temporary lawful possession defense on the lone possessory count of which she was convicted (see Williams, 36 NY3d at 161-163). I see no reason in law, logic, or substantial justice to grant defendant the windfall of a new trial simply because the judge refused to give a temporary lawful possession instruction that was squarely forbade by the governing caselaw.
Entered: August 26, 2021
Mark W. Bennett
Clerk of the Court